UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHAEL BRISCOE,<br><br>               Plaintiff,<br>v.<br><br>CITY OF NEW HAVEN,<br><br>               Defendant. | 3:09-cv-1642 (CSH)<br><br>**MEMORANDUM OF OPINION** |

HAIGHT, Senior District Judge:

Plaintiff Michael Briscoe, an African-American firefighter in New Haven, charges that Defendant City of New Haven ("the City") violated Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), in administering fire department promotional examinations in 2003 that Plaintiff contends had a disparate impact on minority candidates. Defendant moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the amended complaint for failure to state a claim. The Court heard oral argument on April 19, 2010. The exigencies of the case required that the motion be resolved promptly. On April 21, 2010, the Court entered an order dismissing the case. [Doc. 100] The order stated that an opinion setting forth the Court's reasons would follow. This is that opinion.

I.    BACKGROUND

Plaintiff Michael Briscoe holds the position of firefighter in the City of New Haven Department of Fire Services ("NHFD"), an agency of Defendant City of New Haven, and held that position in 2003. During November and December, 2003, the City conducted examinations to determine eligibility for promotion to fill vacant lieutenant and captain positions in the NHFD. Briscoe took the lieutenant examination.

The following background information is taken from the Supreme Court's opinion in *Ricci v. DeStefano*, 129 S.Ct. 2658 (2009).

Seventy-seven candidates completed the 2003 lieutenant examination, of whom 43 were white, 19 were black, and 15 were Hispanic. Of those, 34 candidates passed: 25 whites, 6 blacks, and 3 Hispanics. The City Charter required that the NHFD fill each vacant position by choosing one candidate from the top three scorers on the relevant list. Applying this "rule of three" to the scores on the lieutenant examination, the top 10 candidates were eligible for an immediate promotion to lieutenant. All 10 were white. Subsequent vacancies would have allowed at least 7 black candidates to be considered for promotion to lieutenant. Briscoe ranked 24th among the 77 candidates for promotion to lieutenant. He would not be eligible for promotion if the results of the 2003 lieutenant examination were certified by the New Haven Civil Service Board ("CSB"), a prerequisite to promotions based on competitive tests.

Forty-one candidates completed the captain examination, which Briscoe did not take: 25 whites, 8 blacks, and 8 Hispanics. Of those, 22 candidates passed: 16 whites, 3 blacks, and 3 Hispanics. Under the rule of three, 9 candidates were eligible for an immediate promotion to captain: 7 whites and 2 Hispanics.

City officials, including its counsel, considered these results, became concerned that the tests had discriminated against minority candidates, and communicated that concern to the five-member CSB. During January through March, 2004, the CSB conducted five public meetings to consider whether to certify the results of the 2003 lieutenant and captain examinations. Witnesses testified. Documentary evidence was received. The final meeting took place on March 18, 2004. With one member recused, the CSB deadlocked: two members voted for

certifying the results and two voted against. The practical result was that the CSB did not certify the results.

Firefighters who had scored highly on the examinations were denied a chance at promotions by the CSB's decision not to certify the results. On July 8, 2004, 17 white firefighters and one Hispanic firefighter filed a complaint in this Court against the City, Mayor John DeStefano, and other involved individuals, alleging that the CSB's vote not to certify the results of the promotional examinations violated the Equal Protection Clause of the Fourteenth Amendment and the disparate-treatment prohibition in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a). The case was assigned to Judge Arterton. *Ricci, et al., v. DeStefano, et al.*, Civil No. 3:04cv1109 (JBA).

In *Ricci*, the City defendants asserted that they had a good-faith belief that they would have violated the disparate-impact provision in Title VII, § 2000e-2(k), had they certified the examination results, and could not be held liable for a disparate-treatment violation incurred in attempting to comply with Title VII's disparate-impact bar. The *Ricci* plaintiffs countered that the defendants' good-faith belief that they were acting to prevent a disparate impact, absent adequate evidentiary support for that belief, was not a valid defense to allegations of disparate treatment and unconstitutional racial discrimination. This Court granted the City defendants' motion for summary judgment and dismissed the complaint. 554 F.Supp.2d 142 (D.Conn. 2006). The Second Circuit affirmed. 530 F.3d 87 (2d Cir. 2008). The Supreme Court granted certiorari, reversed the Court of Appeals in a 5-4 opinion, and remanded the case for further proceedings

consistent with its opinion. *Ricci v. DeStefano*, 129 S.Ct. 2658 (2009).[1]

The Supreme Court held that the *Ricci* plaintiffs/petitioners "are entitled to summary judgment on their Title VII claims." *Id.* at 2681. Following remand of the *Ricci* case to this Court, Judge Arterton issued an order on November 24, 2009 (1) directing the entry of judgment against the City on the *Ricci* plaintiffs' Title VII disparate-treatment claim; (2) directing the CSB to "certify the results of the 2003 promotional examinations for the positions of Lieutenant and Captain in the New Haven Fire Department," and to "certify the promotional lists for each position derived from those examination results"; and (3) directing the City to promote 8 named individuals to the rank of lieutenant and 6 named individuals to the rank of captain. On November 30, 2009, the CSB complied with that order by certifying the 2003 examination results and the accompanying promotional lists. Further remedies to be accorded the *Ricci* plaintiffs and related questions are presently pending before Judge Arterton.

## II. BRISCOE'S ACTION

Briscoe filed his complaint in the captioned case on October 15, 2009 [Doc. 1], and an amended complaint as of right on November 2, 2009 [Doc. 7] ("the Amended Complaint"). The Amended Complaint alleges in ¶ 1:

> The 2003 New Haven fire lieutenant examination had two parts: a multiple-choice written test and an oral exam. Ranking on the eligibility list depended on how the City chose to weight the scores on the two components. The oral exam was a better way to assess candidates' skills and abilities than the written test and had less disparate impact on African-Americans. Yet the City chose to weight the written test 60 percent and the oral exam 40 percent. This weighting reduced the validity of the overall selection process; it was

---

[1] Subsequent references in this opinion to "*Ricci*" are to the Supreme Court's opinion, unless otherwise noted.

> arbitrarily chosen, without any pretense that it was job related; it was contrary to standard practice among similar public safety agencies, where the norm is to weight the oral component 70 percent; it had a disparate impact on African-American candidates; and it will prevent the plaintiff from being promoted to the rank of lieutenant, even though he is one of the most highly qualified candidates.

Briscoe claims that the City violated the disparate-impact provision in Title VII, § 2000e-2(k), by weighting the written portion of the 2003 fire department promotional examinations as 60% of the total score, while the oral portion of the exam accounted for the other 40% of the score. Plaintiff alleges, and I accept on this motion to dismiss, that he scored highest of the seventy-seven lieutenant candidates on the oral portion, yet scored only twenty-fourth overall, on account of his lower score on the written portion. (Am. Compl. ¶ 16)

Plaintiff claims that the 60/40 written/oral weighting has a disparate impact on minority applicants, is not job related and is not justified by business necessity, and is likely to have an adverse impact greater than is required by business necessity. That is, Plaintiff claims that a different type of exam or a different weighting of the portions of the exam (Am. Compl. ¶ 18) would be equally good or better at identifying the best-qualified candidates for promotion, and would have less disparate impact on racial minorities. The thirteen top-scoring candidates for promotion using the 60/40 written/oral weighting system were white, whereas using a 30/70 written/oral weighting, three of the top twelve scorers, including Plaintiff, would have been African-American. (Am. Compl. ¶¶ 15 & 17) Plaintiff seeks promotion to the rank of lieutenant, monetary damages, and an injunction prohibiting the City from continuing to use the 60/40 weighting system for future examinations.

On December 23, 2009, Sean Patton moved to intervene in this case. [Doc. 30] Patton is

one of the *Ricci* plaintiffs, but in light of his exam score, he was not among those promoted to lieutenant pursuant to Judge Arterton's November 24, 2009 order. Patton's theory of intervention is that any relief granted to Briscoe on Briscoe's disparate-impact claim will have an adverse effect on Patton's disparate-treatment claim and on his opportunity for promotion.

On January 29, 2010, the City moved to dismiss Briscoe's Amended Complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P., on the ground that the Amended Complaint fails to state a claim upon which relief can be granted. [Doc. 52]  The City asserted several alternative grounds for dismissal:

    1. The Supreme Court's ruling in *Ricci* foreclosed Briscoe's disparate-impact claim.

    2. Briscoe's claim is barred by 42 U.S.C. § 2000e-2(n) as a collateral attack upon a litigated judgment or order.

    3. Briscoe's claim is time-barred by the applicable statute of limitations.

    4. Briscoe's claim is barred by the equitable doctrine of laches.

    5. The relief Briscoe seeks is explicitly prohibited by 42 U.S.C. § 2000e-2(l), in that he impermissibly seeks an adjustment or alteration of test scores based upon race.

On March 3, 2010, Briscoe moved for leave to file a further amended complaint [Doc. 63], without including the form of the proposed pleading. On April 19, 2010, at the Court's direction, he filed a Proposed Second Amended Complaint [Doc. 97]. The first paragraph of the Proposed Second Amended Complaint setting forth Briscoe's theory of the City's disparate-impact liability, as well as his prayers for relief, are identical to those sections of the First Amended Complaint. The Proposed Second Amended Complaint seeks to add claims of constitutional due process violations in connection with the City's implementation of the 2003

lieutenant's examination, and claims of improper scoring in alleged violation of the City Charter and Civil Service rules. Supplemental jurisdiction under 28 U.S.C. § 1367 is asserted with respect to these latter claims.

The City contends that Briscoe's Proposed Second Amended Complaint suffers from the same infirmities identified in the City's Motion to Dismiss the First Amended Complaint. Accordingly, the City urges that Briscoe's motion for leave to file a Second Amended Complaint should be denied on the ground of futility, since the pleading could not survive a motion to dismiss.

In March 2010, the City announced that an examination for the NHFD administrative position of Director of Training would be held on April 30 and May 1, 2010.  Candidates must hold the rank of lieutenant or captain to participate.  Briscoe sent a written request to the City for permission to sit for the exam, on the ground that while he was not presently a lieutenant, he might become one if this case succeeded.  The City declined.  On March 30, 2010, Briscoe filed a motion for a preliminary injunction [Doc. 70] seeking an order of the Court that he be permitted to sit for the test.

On April 8, 2009, Matthew Marcarelli moved to intervene in this case [Doc. 77] for the purpose of opposing Briscoe's preliminary injunction motion.  Marcarelli, a captain in the NHFD, is a *Ricci* plaintiff who was promoted to the rank of captain as the result of Judge Arterton's November 24, 2009 order in that case.  Marcarelli is going to take the Director of Training examination and does not want Briscoe to take it.

On April 19, 2010, the Court heard oral argument on the City's motion to dismiss and on Plaintiff's motion to amend.  Although the motions to intervene were still pending, the Court

permitted counsel for the putative intervenors to be heard in support of the City's motion to dismiss. There was general agreement at the hearing that if the Court granted the City's motion to dismiss Briscoe's amended complaints, present and proposed, for failure to state a viable federal claim, that would render moot Briscoe's pending motion for a preliminary injunction with respect to the Director of Training examination, and the pending motions of Patton and Marcarelli to intervene in this action.

## III.   STANDARD OF REVIEW

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." *Rescuecom Corp. v. Google, Inc.*, 562 F.3d 123, 127 (2d Cir. 2009). The Court's function in deciding a motion to dismiss "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Levitt v. Bear Stearns & Co.*, 340 F.3d 94, 101 (2d. Cir. 2003). "This issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted). "Nor does a complaint suffice if it tenders naked factual assertions devoid of further factual development." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Rather, "a complaint must contain sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 1950. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When deciding a motion to dismiss, the Court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993). In the case at bar, Defendant requests that the Court take judicial notice of the Supreme Court's decision in *Ricci v. DeStefano*, 129 S. Ct. 2658 (2009).

## IV. DISCUSSION

The City maintains that Briscoe's Amended Complaint must be dismissed because his Title VII disparate-impact claim is squarely foreclosed by the Supreme Court's decision in *Ricci*. Briscoe responds that *Ricci* does not preclude his trying now to make the record of disparate impact that the City previously failed to make. Resolving this dispute requires a careful analysis of what the Supreme Court held in *Ricci*, the Court's rationale for that holding, and the manner in which it was expressed.

The City's defense to the *Ricci* plaintiffs' disparate treatment claim was "that it acted to comply with Title VII's disparate-impact provision." 129 S.Ct. at 2677. Based on the record before it, the Court rejected that defense:

> [U]nder Title VII, before an employer can engage in intentional
> discrimination for the asserted purpose of avoiding or remedying
> an unintentional disparate impact, the employer must have a strong
> basis in evidence to believe it will be subject to disparate-impact
> liability if it fails to take the race-conscious, discriminatory action.

*Id*. The City's defense in *Ricci* failed because the evidence, including the record amassed during

the CSB meetings and before the district court, did not, in the *Ricci* majority's view, establish a strong basis to believe that the City would have been liable for a disparate-impact violation if it had certified the test results. The Court reasoned:

> The racial adverse impact here was significant, and petitioners do not dispute that the City was faced with a prima facie case of disparate-impact liability. . . . Based on the degree of adverse impact reflected in the results, respondents were compelled to take a hard look at the examinations to determine whether certifying the results would have had an impermissible disparate impact. The problem for respondents is that a prima face case of disparate-impact liability – essentially, a threshold showing of a significant statistical disparity, and nothing more – is far from a strong basis in evidence that the City would have been liable under Title VII had it certified the results. That is because the City could be liable for disparate-impact discrimination only if the examinations were not job related and consistent with business necessity, or if there existed an equally valid, less-discriminatory alternative that served the City's needs but that the City refused to adopt. *§ 2000e-2(k)(1)(A),(C)*. We conclude there is no strong basis in evidence to establish that the test was deficient in either of these respects.

*Id*. at 2678 (citation to case omitted). Anticipating that rationale, the *Ricci* majority opinion begins by saying:

> We conclude that the race-based action like the City's in this case is impermissible under Title VII unless the employer can demonstrate a strong basis in evidence that, had it not taken the action, it would have been liable under the disparate-impact statute. The respondents, we determine, cannot meet that threshold standard. As a result, the City's action in discarding the tests was a violation of Title VII.

*Id*. at 2664. And, having articulated that rationale and directed that the 2003 promotional exam results be certified, the opinion concludes with a statement that resonates in Briscoe's case:

> If, after it certifies the test results, the City faces a disparate-impact suit, then in light of our holding today it should be clear that the City would avoid disparate-impact liability based on the strong

>       basis in evidence that, had it not certified the results, it would have
>       been subject to disparate-treatment liability.

*Id*. at 2681.

The Supreme Court held that the *Ricci* plaintiffs/petitioners "are entitled to summary judgment on their Title VII claim," and remanded the case "for further proceedings consistent with this opinion." *Id.* Obedient to that instruction, Judge Arterton directed the entry of judgment in favor of the *Ricci* plaintiffs on their Title VII claim of disparate treatment. She directed the CSB to certify the results of the 2003 examinations and the promotional lists for the positions of lieutenant and captain derived from those results. The CSB promptly did so. Judge Arterton also ordered the immediate promotion of 8 firefighters to lieutenant and 6 to captain, they being the individuals whose right to promotion was unquestionably established by the 2003 test results.

*Ricci* might have taken a different course on remand, had the Supreme Court so desired. The Court did not have to direct the entry of summary judgment on the *Ricci* plaintiffs' disparate-treatment claim. It could have remanded the case to the lower courts for further evidentiary proceedings, to be conducted in light of the Court's "strong basis in evidence" formulation. Indeed, Justice Ginsburg, writing for the four dissenters, focused on the majority's failure to follow that procedure:

>       The Court stacks the deck further by denying respondents any
>       chance to satisfy the newly announced strong-basis-in-evidence
>       standard. When this Court formulates a new legal rule, the
>       ordinary course is to remand and allow the lower courts to apply
>       the rule in the first instance. . . .
>
>       The lower courts focused on respondents' "intent" rather than on
>       whether respondents in fact had good cause to act. Ordinarily, a

> remand for fresh consideration would be in order. But the Court
> has seen fit to *preclude further proceedings*. I therefore explain
> why, if *final adjudication* is indeed appropriate, New Haven should
> be the prevailing party. . . .
>
> As earlier noted, I would not oppose a remand for further
> proceedings fair to both sides. It is the Court that has chosen to
> *short-circuit this litigation* based on its pretension that the City has
> shown, and can show, nothing more than a statistical disparity.

129 S.Ct. 2702-03, 2703 n.10, 2707 (citations omitted) (emphases added).

If the *Ricci* majority had adopted the dissenters' preferred procedure on remand, the City would have had a chance to defend its decision to discard the test results and to demonstrate that it could satisfy the strong-basis-in-evidence standard with respect to disparate impact liability. Moreover, if the case had been remanded for that purpose, Briscoe or any minority firefighter so inclined could have sought leave to intervene in the litigation to raise the claims he seeks to raise in this action, such as attacking the 2003 examinations' written-versus-oral weighting.

The Supreme Court was aware of the weighting issue, although it does not appear to have been a primary focus of the litigation. Justice Kennedy wrote for the majority: "[R]espondents have produced no evidence to show that the 60/40 weighting was indeed arbitrary. . . . Nor does the record contain any evidence that the 30/70 weighting would be an equally valid way to determine whether candidates possess the proper mix of job knowledge and situational skills to earn promotions." 129 S.Ct. at 2679. The point of the dissent was that there should have been an opportunity on remand to make such a showing, and to demonstrate that the strong-basis-in-evidence standard was met. That would have enabled the City, or Briscoe, had he sought and been granted leave to intervene, an opportunity to offer any evidence they could marshal that the 60/40 weighting was neither job-related nor business-necessitated, and that equally effective

promotional testing was available which was less likely to result in disparate impact.

However, the dissenters did not prevail. The *Ricci* majority held that the *Ricci* plaintiffs were entitled to summary judgment on their Title VII disparate treatment claim. The inevitable consequences swiftly followed on remand to the district court: entry of judgment, certification of the test results and promotion lists, and promotions in accordance with those lists. Justice Ginsburg's statements that the Court has denied the City "any chance to satisfy" the strong-basis-in-evidence standard, "seen fit to preclude further proceedings," and "chosen to short-circuit this litigation" are more than lamentations; they are acknowledgments of the practical consequences of the *Ricci* decision. The Supreme Court having declined to remand the case for further evidentiary proceedings regarding disparate impact, Briscoe cannot circumvent that decision by filing another lawsuit with respect to the same exams to attempt to create the record that would otherwise have been made upon remand.

Given the logical consequences of the strong-basis-in-evidence standard announced in *Ricci*, the holding in *Ricci* that the City's action in refusing to certify the 2003 examination results violated Title VII's disparate-treatment prohibition necessarily forecloses a subsequent claim that the results of *the same 2003 NHFD promotional examinations* must be rejected because they violated Title VII's disparate-impact prohibition. Justice Kennedy's opinion presaged that conclusion with its closing observation that "[i]f, after it certifies the test results, the City faces a disparate-impact suit, then in light of our holding today it should be clear that the City would avoid disparate-impact liability based on the strong basis in evidence that, had it not certified the results, it would have been subject to disparate-treatment liability." 129 S.Ct. at 2681. That hypothetical event came to pass when Briscoe filed this disparate-impact suit against

the City involving the same examinations.

Briscoe argues that it is unfair to apply *Ricci* to foreclose his case, citing cases for the familiar propositions that one is not bound by the decision in a case to which he was not a party, and that everyone deserves his own day in court. However, this argument, while appealing and true as far as it goes, does not survive analysis when viewed in light of the fact that the Supreme Court in *Ricci* specifically anticipated and explicitly foreclosed subsequent disparate impact suits, such as Briscoe's, against the City based on the 2003 exams. The Court concluded that based upon the record before it, no strong basis in evidence had been established to support the City's decision to throw out the exams because of disparate impact. And the Court precluded any further expansion of that record, either on remand in *Ricci* or in some subsequent disparate impact suit such as Briscoe's. If, as he contends, Briscoe is denied his day in court or is bound by a decision in a case to which he was not a party, it is because the Supreme Court decided as much, and this court is bound by the decisions of the high court.

Certainly, the Supreme Court's course of action served to vindicate other important interests, such as finality and the prevention of collateral attack on judgments and the re-litigation of issues that have been resolved. Furthermore, given the practical reality that all of the New Haven firefighters who took the 2003 promotional exams, including Briscoe, were acutely aware of the pendency of the *Ricci* litigation, I cannot accept Briscoe's suggestion that he was entitled to stand by for five years, while the case progressed to the Supreme Court and back, before seeking to assert his interest, through filing this lawsuit, in having the 2003 exams invalidated on the basis of disparate impact.

*Ricci* makes it plain that if the record had shown "the examinations were not job related

and consistent with business necessity, or if there existed an equally valid, less-discriminatory alternative that served the City's needs but that the City refused to adopt," 129 S.Ct. at 2678, the resulting strong evidentiary basis for disparate-impact liability would have justified the City's race-related refusal to certify the test results and insulated it from disparate-treatment liability. But the *Ricci* majority did not find such proof in the record created before the CSB when it was considering whether to certify the 2003 exams. Nor, in the Supreme Court's estimation, did the City offer such proof before the district court in the *Ricci* case, when defending the CSB's decision not to certify the results against the complaint of the *Ricci* plaintiffs.

Perhaps the City did not believe the tests were deficient in the respects that Briscoe advances, the 60/40 weighting having been included in the City's collective bargaining agreement with the firefighters' union and in tests which the City paid outside experts to construct. But there is no discernible reason why Briscoe could not have intervened pursuant to Federal Rule of Civil Procedure 24 to raise these issues and make these arguments when the *Ricci* case was first before Judge Arterton from 2004 through 2006. Briscoe was aware of the pendency of the *Ricci* litigation, and knew that its result would directly impact him in that it would determine whether the exam results would be certified and who stood to be promoted as a result. The 60/40 weighting the City used in grading NHFD promotional examinations was similarly known to all. Thus, the alleged infirmities of which Briscoe now complains were, or should have been, readily apparent to him in 2003, when the examinations were administered, and in 2004, when the *Ricci* plaintiffs filed their complaint.

Briscoe knew that if the *Ricci* plaintiffs prevailed in forcing the CSB to certify the exam results, he would not be promoted, given the number of available job openings, because he had

scored twenty-fourth among the candidates for lieutenant.  The only way that Briscoe could achieve promotion was to persuade a court that the 2003 exams were properly thrown out because of their impermissible disparate impact on racial minorities.  To the extent that Briscoe wished to advance or emphasize an argument different than that relied upon by the City, namely the 60/40 weighting issue, he should have timely intervened in *Ricci* to do so.  Similarly, to the extent that Briscoe believed that the City's interests in the *Ricci* litigation diverged from his own in such a way that he could not sensibly rely upon the City's launching a full scale attack on its own exams in exposing their disparate-impact-causing deficiencies, then he should have sought to intervene as of right pursuant to Federal Rule of Civil Procedure 24(a)(2), on the basis that the City could not adequately represent his interests.

     Arguably, the Supreme Court's decision not to remand *Ricci* for further evidentiary proceedings on the disparate impact issue placed a substantial burden on Briscoe and other similarly-situated minority employees of the NHFD to have intervened in a disparate treatment suit brought against their employer as a result of the employer's attempts to avoid disparate impact liability, rather than simply relying on the employer to defend the suit.  At the same time, the Supreme Court's decision has the effect of creating an incentive for timely intervention and dissuading collateral attacks on judgments.

     Both the majority opinion and the dissent in *Ricci* emphasize that the case was not remanded for further evidentiary proceedings about whether the strong basis in evidence standard for establishing disparate impact could be satisfied with respect to the City's decision to throw out the 2003 NHFD promotional exams.  In so holding, the Supreme Court in *Ricci* acted to foreclose, with respect to those 2003 exams, the disparate impact theory that lies at the heart of

Briscoe's pleadings, and which the City unsuccessfully urged upon the Supreme Court in *Ricci*. Whatever the effect the Supreme Court's decision in *Ricci* may have on future Title VII cases, Briscoe's claims in this case have to do with the *Ricci* case itself: the 2003 examination he criticizes is the same examination the Supreme Court considered in that case. What the Court held in *Ricci* and what it said in doing so squarely forecloses Briscoe's claims. The Supreme Court remanded the case with directions that the 2003 exam results be certified. That has been done and promotions have been made accordingly. Briscoe cannot now raise a disparate impact claim with respect to those same exam results.

Finally, Plaintiff suggests that, even if his claims for promotion to the rank of lieutenant and for monetary damages are foreclosed by *Ricci*, his request for forward-looking relief, in the form of an injunction prohibiting the City from continuing to use the 60/40 weighting system in future promotional examinations, should not be dismissed, because "the next testing cycle is already overdue; indeed, it may already have begun." [Doc. 95 at 4-6] However, counsel for the City stated at oral argument that, having filled the open positions, the City has "no imminent plans" to give another promotional exam for the positions of lieutenant and captain. (Victor Bolden, Esq., Oral Argument, April 19, 2010, 3:43 PM.) In light of that representation, Plaintiff's claim with respect to future examinations is not yet ripe, in that it relies solely on speculation that the City will continue to employ the 60/40 written/oral weighting to which Plaintiff objects as creating a disparate impact.

Given that the City took the initiative to discard the 2003 exams out of concern that they had an impermissible disparate impact, and subsequently vigorously defended that decision, it may very well be that the City will voluntarily elect to modify its tests with the goal of addressing

17

its concerns that the test has a disparate impact on racial minorities. In holding that, based on the record before it, the City did not have a sufficiently strong basis in evidence to throw out the exam results for suspected disparate impact, the Supreme Court did not necessarily vindicate the exams or the 60/40 weighting as being demonstrably free of disparate impact, nor did it certify that the future use of similar exams would not constitute disparate impact, nor did the Supreme Court mandate that these exams continue to be used in the future. To the contrary, there has long been a policy of encouraging employers to take proactive steps to anticipate and ameliorate any potential disparate impact before it arises. Therefore, this Court will not prospectively assume that the City will fail to consider whether there exists any equally valid, less-discriminatory alternative that serves the interests of the City, its residents, and the fire department in promoting highly qualified leaders who also reflect the racial diversity of the community which they serve.

It is important to emphasize the narrow boundaries of this opinion. I am concerned only with the effect of *Ricci* upon Briscoe's disparate-impact challenge to the 2003 examinations. That limited reach is dictated by the fact that the complaints of the *Ricci* plaintiffs and Briscoe relate solely to the 2003 examinations. Nothing in this opinion would foreclose or diminish the rights of Briscoe or any other firefighter to challenge a subsequent NHFD promotional examination on the same grounds that Briscoe seeks to assert in this case with respect to the 2003 examinations.

Because the Court concludes that Briscoe's claims are squarely foreclosed by *Ricci*, it does not reach or decide any of the alternative grounds for dismissal advanced by the City.

V.   **MOTION TO AMEND**

At the same time that he filed his opposition to the motion to dismiss, Plaintiff also filed

a motion to further amend his Amended Complaint in order to supplement his allegations of disparate impact and to add additional claims with regard to alleged errors in scoring the exams. [Doc. 63]  Rule 15 of the Federal Rules of Civil Procedure provides that after a responsive pleading has been filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). A "court should freely give leave [to amend] when justice so requires." *Id.*  "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  *See New Colt Holding Co. v. RJG Holdings of Fla., Inc.*, 2022 U.S. Dist. LEXIS 26780 at *5 ("[A] plaintiff need not be granted leave to add an apparently futile claim").  An amendment is futile if it would fail to survive a motion to dismiss brought pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001); *see also In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d 351, 392-93 (S.D.N.Y. 2003).  Accordingly, the court may deny a proposed amendment if it fails to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

Because the Proposed Second Amended Complaint [Doc. 97] cannot and does not cure the fundamental deficiency discussed at length above - namely the fact that Briscoe's disparate impact claim with respect to the 2003 exam is foreclosed by the Supreme Court's holding in *Ricci* - Plaintiff's Motion to Amend [Doc. 63] is hereby denied as futile.  Furthermore, in the

19

absence of a viable federal claim, this Court would decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state and municipal law claims relating to the alleged scoring error, and therefore it is futile to permit Plaintiff to amend his complaint to add such claims.

## VI.     CONCLUSION

For the reasons stated herein, Defendant's Motion to Dismiss the Amended Complaint [Doc. 52] is GRANTED.  Plaintiff's Motion to File a Second Amended Complaint [Doc. 63] is DENIED.  All other pending motions are DENIED AS MOOT.  This includes the Motions to Intervene by Sean Patton [Doc. 30] and Matthew Marcarelli [Doc. 77], and Sean Patton's Motion for a Ruling on his Motion to Intervene [Doc. 75], as well as Plaintiff's Motion for Preliminary Injunction [Doc. 70] and Plaintiff's Motion to Conduct Discovery and Modify Protective Order [Doc. 71]. Defendant's Motion to Dismiss the Second Amended Complaint [Doc. 81], which was filed on a contingent basis should the amendment be permitted, is also denied as moot.  The Clerk is directed to enter an order dismissing the Amended Complaint with prejudice, and to close the case.

SO ORDERED.

Dated: New Haven, Connecticut, April 28, 2010.

                                                  /s/ *Charles S. Haight, Jr.*
                                                  Charles S. Haight, Jr.
                                                  Senior United States District Judge