UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHAEL BRISCOE,<br><br>          Plaintiff,<br>v.<br><br>CITY OF NEW HAVEN,<br><br>          Defendant. | 3:09-cv-1642 (CSH) |

**RULING ON MOTION FOR RECONSIDERATION AND
MOTION FOR CLARIFICATION**

HAIGHT, Senior District Judge:

   Plaintiff Michael Briscoe, an African-American firefighter in New Haven, filed suit against Defendant City of New Haven ("the City"), claiming that the City violated Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), in administering fire department promotional examinations in 2003. Plaintiff contended that the 60/40 weighting assigned to the written and oral exam segments, respectively, had a disparate impact on minority candidates. Defendant moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the amended complaint for failure to state a claim. On April 21, 2010, the Court entered an order dismissing the case. [Doc. 100]   On April 28, 2010, the Court set forth the reasons for that ruling in a Memorandum of Opinion [Doc. 101], reported at 2010 WL 1719311, familiarity with which is assumed.

   Now pending are Plaintiff's Motion for Reconsideration and Defendant's Motion for Clarification. For the reasons stated herein, Plaintiff's Motion for Reconsideration [Doc. 102] is granted, but upon reconsideration, the Court substantially adheres to its prior ruling, although it will issue a revised opinion to correct two relatively minor, non-dispositive errors noted by Plaintiff.

Defendant's Motion for Clarification [Doc. 107] is granted, and the requested clarification is provided herein.

I.   **MOTION FOR RECONSIDERATION**

In holding that Briscoe's Title VII disparate impact claim with respect to the 2003 promotional exams was squarely foreclosed by the Supreme Court's decision in *Ricci v. DeStefano*, 129 S.Ct. 2658 (2009), this Court summarized that decision and explained its impact on this case as follows:

> The *Ricci* majority held that the *Ricci* plaintiffs were entitled to summary judgment on their Title VII disparate treatment claim. The inevitable consequences swiftly followed on remand to the district court: entry of judgment, certification of the test results and promotion lists, and promotions in accordance with those lists. . . . The Supreme Court having declined to remand the case for further evidentiary proceedings regarding disparate impact, Briscoe cannot circumvent that decision by filing another lawsuit with respect to the same exams to attempt to create the record that would otherwise have been made upon remand. Given the logical consequences of the strong-basis-in-evidence standard announced in *Ricci*, the holding in *Ricci* that the City's action in refusing to certify the 2003 examination results violated Title VII's disparate-treatment prohibition necessarily forecloses a subsequent claim that the results of *the same 2003 NHFD promotional examinations* must be rejected because they violated Title VII's disparate-impact prohibition.

[Doc. 101 at 13] (emphasis in original). In holding that "the Supreme Court in *Ricci* specifically anticipated and explicitly foreclosed subsequent disparate impact suits, such as Briscoe's, against the City based on the 2003 exams," [Doc. 101 at 14], this Court relied in part on the Supreme Court's statement that:

> If, after it certifies the test results, the City faces a disparate-impact suit, then in light of our holding today it should be clear that the City would avoid disparate-impact liability based on the strong basis in evidence that, had it not certified the results, it would have been subject to disparate-treatment liability.

[Doc. 101 at 10-11, quoting *Ricci*, 129 S.Ct. at 2681.]

Plaintiff now seeks reconsideration on the basis of the following statement in this Court's

decision:

> Briscoe knew that if the *Ricci* plaintiffs prevailed in forcing the CSB to certify the exam results, he would not be promoted, given the number of available job openings, because he had scored twenty-fourth among the candidates for lieutenant. The only way that Briscoe could achieve promotion was to persuade a court that the 2003 exams were properly thrown out because of their impermissible disparate impact on racial minorities.

2010 WL 1719311, at *9. In his motion for reconsideration, Plaintiff responds, "In fact, Plaintiff has repeatedly asserted, with supporting evidence, that he was not aware of his score or standing on the list until after the Supreme Court's decision in June 2009." [Doc. 103 at 1] Plaintiff is correct that the record of this litigation reflects that he has consistently maintained that he was unaware of his specific test scores or placement on the promotion list prior to the Supreme Court's *Ricci* decision in June 2009.[1] Given the procedural posture of the case, which was before this Court on a Rule 12(b)(6) motion to dismiss, the Court assumed the truth of Plaintiff's allegations, as it must. To the extent that the language in the ruling to which Plaintiff objects overstates the specificity of Plaintiff's asserted knowledge with respect to his scores, it will be corrected as follows to more accurately reflect the Court's intended meaning:

> Briscoe knew that if the *Ricci* plaintiffs prevailed in forcing the CSB to certify the exam results, he would not be immediately promoted. Given the number of available job openings, and because he had scored twenty-fourth among the candidates for lieutenant, the only way that Briscoe could achieve promotion was to persuade a court that the 2003 exams were properly thrown out because of their impermissible disparate impact on racial minorities.

Plaintiff has conceded that "the City did disclose at the time of the civil service hearings that no

---

[1] The Amended Complaint states, "Because the City did not disclose the scores of any named candidates for years after the examination, the plaintiff until recently did not know his overall examination score, his rank on the uncertified lieutenant list, or the effect of the 60/40 weighting on his promotional opportunities." [Doc. 7 at ¶ 3] The Court was also aware of Plaintiff's position on this point from his representations at oral argument and in briefs on various motions. Plaintiff sought to add additional allegations regarding the timing of his awareness of his scores in the Proposed Second Amended Complaint. [Doc. 97 at ¶ 36]

3

minority candidates would be eligible for immediate promotion." [Doc. 103 at 2] However, Plaintiff adds that at that time, the City also disclosed that "subsequent vacancies would allow three... black candidates to be considered." *Id.* Although Plaintiff's motion for reconsideration does not explain the significance of these facts to the Court's holding that his claim is foreclosed by *Ricci*, the Court surmises that Plaintiff intends to suggest that he had no obligation to assert any interests he might have with respect to the 2003 exams until it became clear to him what his standing on the list was and whether he might be one of the three black candidates that stood to be promoted. However, as proposed intervenor and *Ricci* plaintiff Sean Patton notes, the *Ricci* plaintiffs did not know their scores either, or whether they personally stood to benefit from forcing certification of the test results, at the time they commenced that litigation to assert their disparate treatment claim.[2] [Doc. 111 at 2]

      The validity of Briscoe's claim that the weighting used for scoring the fire department promotional exams had a disparate impact on racial minority applicants as a group does not turn on whether Briscoe himself was one of the three black candidates who might be considered for subsequent vacancies. When Briscoe learned his specific score and standing on the list is irrelevant in light of the facts of which he was indisputably aware. As this Court stated in the ruling at issue, "Briscoe was aware of the pendency of the *Ricci* litigation, and knew that its result would directly impact him in that it would determine whether the exam results would be certified and who stood to be promoted as a result." [Doc. 101 at 15] This knowledge was sufficient to trigger an obligation

---

    [2] I thought it fair to allow Patton to be heard on the City's original motion to dismiss, and adhere to that view on Briscoe's motion for reconsideration.

to act in a timely manner[3] to assert any interests he might have had with respect to the 2003 fire department promotional examinations and the disparate treatment and disparate impact claims at issue in *Ricci*. In the interest of finality, he was not at liberty to await disposition of the case by the Supreme Court before filing parallel litigation seeking a result adverse to the one reached by the high court, particularly given that the Supreme Court's ruling in *Ricci* explicitly foreclosed such subsequent disparate impact claims with respect to the 2003 promotional exams.

Plaintiff also notes that, in summarizing the facts of *Ricci*, this Court stated that subsequent vacancies would have permitted *seven* black candidates to be considered for promotion [Doc. 101 at 2], when in fact the *Ricci* decision states instead that at least *three* black candidates would be considered for promotion. 129 S. Ct. at 2666. The Court will correct this transcription error.

Plaintiff subsequently filed a supplemental memorandum in support of his motion for reconsideration, asserting that the dismissal should be reconsidered in light of the Supreme Court's May 24, 2010 decision in *Lewis v. City of Chicago*, 130 S. Ct. 2191 (2010), which held that a plaintiff who fails to file a timely charge challenging the *adoption* of an employment practice may nonetheless assert a disparate-impact claim in a timely charge challenging the employer's later *application* of that practice. In 1995, the City of Chicago gave a fire department promotional exam, classified applicants into groups based upon their scores on the test, and then used those categories

---

[3] Plaintiff seeks to distinguish between information that triggers a duty to intervene versus a duty to assert an independent claim. [Doc. 112 at 1-2] Regardless of whether he preferred to seek intervention in *Ricci* or to file a separate lawsuit, which likely would have been consolidated with *Ricci*, Plaintiff had an obligation to do so *before* the issues were decided on the merits by the Supreme Court. In *Ricci*, the Supreme Court explained that the City would not be subject to disparate-impact liability for certifying the results of the 2003 exams in order to remedy the disparate treatment the Court had found to have occurred. 129 S.Ct. at 2681. On May 12, 2010, Judge Arterton held that Briscoe's December 1, 2009 motion to intervene in *Ricci* was untimely. [Doc. 236 in 3:04cv1109 (JBA)]

eleven times over the following seven years to make promotions.  The Supreme Court in *Lewis* rejected the Seventh Circuit's conclusion that the Chicago African-American firefighters' disparate impact suit "was untimely because the earliest EEOC charge was filed more than 300 days after the only discriminatory act: sorting the scores into the 'well-qualified,' 'qualified,' and 'not-qualified' categories."  *Id.* at 2196.

   *Lewis* avails Briscoe nothing.  While both cases involve municipal firefighters asserting Title VII disparate-impact claims with respect to qualifying examinations, these superficial similarities do not disguise the substantive dissimilarity, which is total.  *Lewis* posed the question "whether a plaintiff who does not file a timely charge challenging the *adoption* of a practice – here, an employer's decision to exclude employment applicants who did not achieve a certain score on an examination – may assert a disparate-impact claim in a timely charge challenging the employer's later *application* of that practice," 130 S. Ct. at 2195 (emphases in original), and answered it in the affirmative, holding that the firefighters were not required to file EEOC charges within 300 days of the classification of the exam scores into the various categories, as long as they filed EEOC charges within 300 days of the City's use of those categories to make the promotions at issue.  Thus *Lewis* turned entirely upon the statute of limitations in Title VII cases, a frequently vexing subject.

   In the case at bar, while the City of New Haven made a statute of limitation argument as one of several alternative arguments it offered in support of its motion to dismiss, this Court dismissed Briscoe's complaint on an entirely different ground, the preclusive effect of *Ricci*, and added: "Because the Court concludes that Briscoe's claims are squarely foreclosed by *Ricci*, it does not reach or decide any of the alternative grounds for dismissal advanced by the City."  2010 WL 1719311, at *11.

6

Accordingly, *Lewis* does not mandate reconsideration of this Court's ruling dismissing Briscoe's case. Nor does *Lewis* modify *Ricci* in any way, or affect this Court's application of *Ricci* to the case at bar, as *Ricci* turned upon a different set of circumstances. *Lewis* cites and quotes *Ricci* for the proposition that "a plaintiff establishes a prima facie disparate-impact claim by showing that the employer '*uses* a particular employment practice that causes a disparate impact' on one of the prohibited bases," 130 S. Ct. at 2197-98, but the statute of limitations holding in *Lewis* has nothing to do with the effect of *Ricci* upon Briscoe's claim.

As Plaintiff acknowledges, the "use of the 2003 test results was ordered by the Supreme Court." [Doc. 113 at 2] The Supreme Court in *Ricci* concluded that "the City's discarding the test results was impermissible under Title VII" and the *Ricci* plaintiffs were entitled to summary judgment on their disparate treatment claim because the City "lacked a strong basis in evidence to believe it would face disparate-impact liability if it certified the examination results." 129 S.Ct. at 2681. Briscoe's suit was untimely in the sense that the Supreme Court had already held that it had been illegal for the City to throw out the 2003 exam results on the basis of the record before it, and Briscoe sought, through his disparate impact claim, to assert that it was illegal for the City *not* to throw out the 2003 exam results. As noted, this Court never held, because it never reached the issue, that Briscoe's suit was untimely in the sense that it violated the statute of limitations. *Lewis* does not require a result different from that reached in the Court's prior ruling dismissing Briscoe's claim.

## II.     MOTION FOR CLARIFICATION

Defendant filed a motion seeking clarification that this Court considered Plaintiff's motion to amend to add a federal procedural due process claim and that the Court deemed such an amendment futile. While the Court does not believe such clarification is necessary in light of the

7

plain language of the opinion, it is nonetheless provided herein.

In summarizing the Proposed Second Amended Complaint, the Court noted that the Plaintiff "seeks to add claims of constitutional due process violations in connection with the City's implementation of the 2003 lieutenant's examination, and claims of improper scoring in alleged violation of the City Charter and Civil Service rules. Supplemental jurisdiction under 28 U.S.C. § 1367 is asserted with respect to these latter claims." [Doc. 101 at 6-7] The Court was referring to, and understood Plaintiff to be referring to, the federal and not the state constitution. See Proposed Second Amended Complaint at ¶ 34 (referencing the "right to due process of law protected by the Fourteenth Amendment to the United States Constitution."). The Proposed Second Amended Complaint also sought to supplement the factual allegations with respect to Plaintiff's disparate impact claim, to add, for example, specific allegations about the timing of Plaintiff's knowledge of his score and about the City's ongoing use of the 60/40 weighting for more than twenty years. The Court concluded:

> Because the Proposed Second Amended Complaint [Doc. 97] cannot and does not cure the fundamental deficiency discussed at length above - namely the fact that Briscoe's disparate impact claim with respect to the 2003 exam is foreclosed by the Supreme Court's holding in *Ricci* - Plaintiff's Motion to Amend [Doc. 63] is hereby denied as futile. Furthermore, in the absence of a viable federal claim, this Court would decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state and municipal law claims relating to the alleged scoring error, and therefore it is futile to permit Plaintiff to amend his complaint to add such claims.

[Doc. 101 at 19-20] "[T]he absence of a viable federal claim" encompasses both the inadequacy of the proposed supplemental allegations to cure the deficiencies in Plaintiff's disparate impact claim and the futility of Plaintiff's tangentially-asserted[4] and essentially un-argued procedural due process

---

[4] The due process claim at issue appears only in ¶ 34 of the Proposed Second Amended Complaint [Doc. 97], under the inaccurate heading "Factual Allegations Relating to Improper

8

claim.

In response to the Motion for Clarification, Plaintiff argued that he had a protectible property interest in promotion and called for "reinstatement of [his] claim." [Doc. 116 at 2] On reply, Defendant noted that it had filed an opposition to Plaintiff's motion to amend which set forth numerous reasons why Plaintiff's proposed procedural due process claim was futile, and that Plaintiff's reply to the motion to amend had failed to even mention the procedural due process claim, and that the claim should therefore be deemed abandoned. While Defendant can hardly have been surprised that its motion for clarification triggered additional commentary from Plaintiff regarding the claim at issue, Defendant also argued in reply that Plaintiff was not entitled to raise substantive arguments with respect to the procedural due process claim for the first time in response to Defendant's motion for clarification or to attempt to convert that motion into his own untimely, additional motion for reconsideration. [Doc. 120]

In a sur-reply which he did not seek leave to file, Plaintiff "agrees that the City is correct when it says that before Plaintiff's Response, Doc. 116, to the City's Request for Clarification, plaintiff had not advanced a due process argument. Plaintiff therefore does not rely on Doc. 116, and the Court may treat Plaintiff's due process claim as having been withdrawn." [Doc. 121] Of course, a claim cannot be withdrawn if it has been previously ruled upon or abandoned. The Court considered Plaintiff's procedural due process claim and rejected it as futile for substantially the reasons asserted by Defendant in its memorandum in opposition to the motion to amend. [Doc. 80] In doing so, the Court also took into account the fact that Plaintiff, in failing to respond to

---

Scoring," although it is a legal claim and not a factual assertion. Compare the Title VII claim set forth at ¶¶ 40-41, incorporating by reference all the preceding factual allegations.

Defendant's arguments, had essentially conceded the point.

### III.     CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Reconsideration [Doc. 102] is granted, but upon reconsideration, the Court substantially adheres to its prior ruling, although it will issue a revised opinion to correct two relatively minor, non-dispositive errors noted by Plaintiff. Defendant's Motion for Clarification [Doc. 107] is granted, and the requested clarification **is** provided herein.

It is SO ORDERED.

Dated: New Haven, Connecticut, July 12, 2010.

                                                                          */s/ Charles S. Haight, Jr.*
                                                                          Charles S. Haight, Jr.
                                                                          Senior United States District Judge