## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| MICHAEL BRISCOE,<br><br>                    Plaintiff,<br>    v.<br><br>CITY OF NEW HAVEN,<br><br>                    Defendant. | 3:09-cv-1642 (CSH) |

## RULING ON MOTION TO INTERVENE

HAIGHT, Senior District Judge:

### I.    Introduction

Plaintiff Michael Briscoe, an African-American firefighter in New Haven, filed suit against defendant City of New Haven (the "City"), claiming that the City violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, in administering New Haven Fire Department (NHFD) promotional examinations in 2003. Plaintiff contends that the weighting assigned to the written and oral examination segments, respectively, had a disparate impact on minority candidates.

Nineteen firefighters in the employ of the NHFD move to intervene in this action commenced by Briscoe (collectively, "the Movants").[1] The present motion to intervene [Doc. 48] was filed on February 14, 2012. The complex factual background and procedural history of the case are summarized in Part I of this Ruling. Familiarity is assumed with this Court's decision dated July 12,

---

[1]  The Movants are Michael Blatchley, Gregory Boivin, Gary Carbone, Michael Christoforo, Ryan Divito, Steven Durand, William Gambardella, Brian Jooss, James Kottage, Matthew Marcarelli, Thomas J. Michaels, Sean Patton, Christopher Parker, Frank Ricci, Edward Riordan, Timothy Scanlon, Benjamin Vargas, John Vendetto, and Mark Vendetto.

2010 reported at 2010 WL 2794212, giving the Court's reasons for its dismissal of the action by order dated April 21, 2010 [Doc. 100]; and with the Second Circuit's decision,  654 F.3d 200 (2d Cir. 2011), reversing that dismissal and remanding the case to this Court for further proceedings.

The Movants are members of the group of firefighters who were plaintiffs in *Ricci v. DeStefano*, No. 3:04CV1109-JBA, which was the subject of a ruling from the United States Supreme Court.  *Ricci v. DeStefano*, 557 U.S. 557 (2009).[2]  In *Ricci*, the Movants challenged the City's decision to abandon the use of scores from the 2003 examinations in deciding which firefighters to promote to vacant captain and lieutenant positions.   They argued that the City's purpose in abandoning the results was to reduce the share of promotions that went to white firefighters.   The Supreme Court held that the City's decision violated Title VII and remanded the action for proceedings consistent with the Court's opinion.   *Id.* at 593.   In August of 2011, the parties concluded the *Ricci* action, on the basis of Offers of Judgment made by the City that were accepted by the Movants.  The City gave the Movants money payments and additional years of service for pension purposes.

Plaintiff is an African-American firefighter who took the 2003 lieutenant examination.  He filed the present action on October 15, 2009.  As summarized by the Second Circuit, Briscoe's disparate impact claim  alleges that "the weighting of the written and oral sections of the 2003 exam – 60% and 40%, respectively, . . . was arbitrary and unrelated to job requirements.  He asserts that the industry norm for such weighting was 30% written/70% oral; under that scoring, he was promotable.  He seeks primarily (1) to enjoin the City from using the 60/40 weighting, and (2)

---

[2]  The group of plaintiffs in *Ricci* included one firefighter who has retired and is not among the Movants.  For simplicity, the Court refers to the *Ricci* plaintiffs and the Movants interchangeably, despite this difference.

eligibility for promotion to lieutenant (with retroactive pay and seniority), without displacing any of the *Ricci* plaintiffs who were promoted."  654 F.3d at 202.

On December 23, 2009 and April 8, 2010, respectively, two of the present Movants, Sean Patton and Matthew Marcarelli, filed Motions to Intervene in this action under Rule 24 of the Federal Rules of Civil Procedure ("Rule 24") [Docs. 30, 77], asserting that the outcome of the present action will affect their interests.  Plaintiff and the City both opposed such intervention.  The Court, when on April 21, 2010 it dismissed the action for unrelated reasons, denied both motions to intervene as moot.

On August 15, 2011, the Second Circuit reversed this Court's dismissal of this action and remanded the action to this Court.  Patton and Marcarelli then filed a request for rulings on their earlier Motions to Intervene [Doc. 128], stating that in view of the Court of Appeals' reversal and remand, those motions were no longer moot.  However, on February 14, 2012, the Movants as a group (which included Patton and Marcarelli) filed the present Motion, replacing any earlier such motions that may have been pending.[3]  On the same day, the Court stayed all proceedings in this action until the Supreme Court decided whether or not to grant the City's petition for a writ of certiorari regarding the Second Circuit's ruling.  After the Supreme Court denied that petition, the Court terminated the stay and set a briefing schedule for the present Motion.  After thorough briefing, counsel for the parties and the Movants delivered oral arguments at a hearing held on September 12, 2012.

---

[3]  At oral argument on the Motion, the Movants' counsel stated that "I think the Court's resolution on the third motion to intervene by all 19 would effectively resolve the first two because I think what I did was I sort of folded over Patton's expressed interests and Marcarelli's expressed interests into the new motion . . ."  Transcript of Motion Hearing Before the Honorable Charles S. Haight, Jr., Sept. 11, 2012 (the "Transcript") [Doc. 203] at 14.

The Movants claim intervention as of right under Rule 24(a), and in the alternative request permissive intervention under Rule 24(b).  Motion at 1.  Because the Court finds, as explained below, that the Movants meet the standard for intervention as of right, it is unnecessary to address permissive intervention.

## II.    Standard for Intervention as of Right

Under Rule 24(a)(2), "[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  For an interest to be cognizable under Rule 24(a)(2), it must be direct, substantial, and legally protectable. *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010).  To intervene as of right, a party must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action. *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 131-33 (2d Cir. 2001).

## III.    Discussion

In addition to the debate about whether the Motion meets the standard for intervention, Plaintiff and the City make two distinct procedural arguments against intervention by the Movants. First, they argue that the Movants are barred from intervention by their acceptance of the Offers of Judgment in the *Ricci* matter.  Plaintiff's Memorandum in Opposition to February 14, 2012 Motion to Intervene ("Pl. Memo.") [Doc. 182] at 5-7; Defendant's Renewed Objection to Motion to Intervene ("City Memo.") [Doc. 181] at 2.  Second, Plaintiff argues that the Motion is procedurally

4

defective in that it was not accompanied by a proposed pleading as required by Rule 24(c).  Pl. Memo. at 1-2.  Since resolution of either of these issues against the Movants would make substantive consideration of the Motion unnecessary, the Court considers these issues first.

### A.   Are the Movants barred from intervention by their acceptance of the Offers of Judgment in the Ricci case?

The parties argue that the Movants are barred from receiving additional relief from the City by their acceptance of offers of judgment in *Ricci*.  Pl. Memo. at 5-6; City Memo. at 2.  However, the Movants do not appear to be seeking any additional relief from the City.  The Motions suggest that the goal of their intervention is to prevent remedies being granted to Briscoe that would harm their interests, rather than receiving any separate or additional relief themselves.  Motion at 11.  On the other hand, because the Movants have not filed a pleading, they have not formally defined their goals.

The Movants are not required to assert claims for relief in order to intervene as of right.  The text of Rule 24 suggests that they must bring a claim or defense to obtain *permissive* intervention: the Court may permit intervention by anyone who "has a claim or defense that shares with the main action a common question of law or fact."  Rule 24(b)(1)(B).  But the text suggests that they do not need to make a claim to intervene as of right: the Court must permit intervention to anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Rule 24(a)(2).

The Second Circuit implied that no claim for relief is required in two decisions that constitute important precedents for this Ruling, both of which will be discussed further *infra*.  *Bridgeport*

*Guardians, Inc. v. Delmonte*, 602 F.3d 469 (2d Cir. 2010); *Brennan v. New York City Board of Education*, 260 F.3d 123 (2d Cir. 2001). In both cases, public employees who were not African-Americans sought to intervene in actions in which a proposed settlement agreement or order would provide remedies to African-American employees under Title VII. In both cases, the movants asserted that those remedies could impair their relative seniority rights or promotional opportunities. In both cases, the Second Circuit decided that the movants were entitled to intervene as of right and reversed the district court's decisions denying the motion.

In neither *Bridgeport Guardians* nor *Brennan* did the Second Circuit imply that the movants in those actions were required to have claims or defenses. Instead, it based its analysis entirely on the fact that the movants had "interests" in those actions. *Bridgeport Guardians* at 474-75; *Brennan* at 130-32. I interpret *Bridgeport Guardians* and *Brennan* to mean that the Movants at bar need only show that they have protectable "interests" in the action, without asserting separate or discrete claims or defenses.[4]

Apart from the question of additional relief in this action, Plaintiff argues that in *Ricci* the Movants relinquished "any claimed right to block Plaintiff's promotion." Pl. Memo. at 5. However, the set of rights that the Movants relinquished in *Ricci* is not identical to the interests that the Movants have in the present action.

To understand what the Movants relinquished at the conclusion of *Ricci*, the Court must

---

[4] The requirement in Rule 24(c) that the movant file a pleading along with the motion to intervene might suggest that the movant must have some claims that could be presented in a pleading. However, in some cases courts have accepted an Answer, or the adoption of another party's Answer, as the pleading. *See, e.g., Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.*, 782 F.Supp. 870, 874 (S.D.N.Y. 1991). If the movant need not plead beyond answering the allegations of the plaintiff's complaint, there is no requirement that the movant have separate or personal claims or affirmative defenses in the case.

consider the language of the documents that brought that case to an end:  the Offers of Judgment from the defendants, the Notices of Acceptance from the plaintiffs, and the Amended Judgments issued by the Court.  (The original Judgments were superseded.)  Offers of judgment pursuant to Federal Rule of Civil Procedure 68 are construed according to ordinary contract principles.  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 369 F.3d 91, 95 (2d Cir. 2004). This rule applies to determination of their res judicata effects.  *Garcia v. Scoppetta*, 289 F.Supp.2d 343, 353 (E.D.N.Y. 2003).

Inspection of the offer-of-judgment documents in *Ricci* does not support Plaintiff's argument. The language of the Offers of Judgment (*e.g.*, for Blatchley, Doc. 351-1 in the *Ricci* action) is as follows:

> [Defendants] hereby make the following offer of judgment to plaintiff Michael Blatchley in full and final satisfaction of any and all claims *brought in this lawsuit*, including but not limited to claims brought under [list of claims]: the total sum of $132,500.47 in cash and additional pension benefits of substantial value as full satisfaction of any and all claims *brought in this lawsuit*, as more fully described below. . . .

(emphases added.)  Twice, the Offer establishes that what is satisfied is nothing more than the claims brought in the *Ricci* action.

The Movants' Notices of Acceptance (*e.g.*, for Blatchley, Doc 351-1 at 5) state simply that that the plaintiff "unconditionally accepts" the offer of judgment (as they must under Rule 68).  The Amended Judgments (*e.g.*, for Blatchley, Doc. 383 at 1) state that judgment is entered for the plaintiffs "in full and final satisfaction of on [sic.] any and all claims *brought in this lawsuit*." (emphasis added.)  There is no mention of claims that the Movants might have in the future, as a result of future actions by the City in response to this litigation, or of other rights.

The doctrine of res judicata does not normally bar actions on subsequent claims arising after

the first action was brought. *S.E.C. v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1463-64 (2d Cir. 1996) (collecting cases). A district court in this circuit applied this rule to an accepted offer of judgment, holding that it did not preclude a second action based on facts arising after the filing of the first action. *Garcia v. Scoppetta*, 289 F.Supp.2d 343, 353 (E.D.N.Y. 2003). In this case, any remedies that the City adopts that affect the Movants' interests will arise not only after the filing of the first action, but after its conclusion.

The accepted offers of judgment in *Ricci* had a precisely limited scope. They do not preclude intervention here.

### B.    Are the Movants barred from intervention by their failure to file a pleading?

Rule 24(c) provides:

> A motion to intervene must be served on the parties as provided in Rule 5. The motion must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought.

The Movants have not filed a pleading along with their Motion to Intervene, as seemingly required by Rule 24(c), and their reply brief on the present motion implies that they do not intend to file a pleading in the near future. Proposed Intervenors' Reply to Parties' Objections to Motion to Intervene ("Reply Memo.") [Doc. 183] at 5 ("the Court should likewise apply Rule 24(c) flexibly to dispense with the need for intervenors to file a pleading for several reasons"). Plaintiff argues that this procedural failure by itself bars intervention. Pl. Memo. at 1-2.

Courts have certainly permitted the filing of the pleading after the filing of the motion to intervene. "We have made clear that the failure to comply with the Rule 24(c) requirement for a pleading is a 'purely technical' defect which does not result in the "disregard of any substantial

right.'" *Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1188 (9th Cir. 2009), *quoting Shores v. Hendy Realization Co.*, 133 F.2d 738, 742 (9th Cir. 1943).  "The circuits appear to be split in their approach to enforcement of Rule 24(c), with a majority favoring a permissive interpretation of the rule."  *Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309, 313 (6th Cir. 2005) (collecting cases, and finding that no pleading was required where its absence did not prejudice the parties).

This Court took essentially the same position when it granted a motion to intervene that lacked a pleading, but ordered the movant to file and serve within thirty days an answer and counterclaim.  *Penn Lyon Homes, Inc. v. Liberty Mut. Ins. Co.*, No. 3:00CV1808, 2001 WL 789200, at *1 (D.Conn. May 14, 2001) (Chatigny, J.).  A party may also adopt another party's pleading rather than filing its own.  *Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.*, 782 F.Supp. 870, 874 (S.D.N.Y. 1991).  In this case, though, there is not yet an Answer for the Movants to adopt.

A few courts have dispensed with the requirement of a pleading altogether even when the movant did not adopt an existing pleading.  In *Tachiona v. Mugabe*, 186 F.Supp.2d 383, 393 (S.D.N.Y. 2002), the court accepted a letter brief as both motion and pleading.  In *Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, No. 01Civ.8539, 2003 WL 22790916, at *3-4 (S.D.N.Y. Nov. 25, 2003), the court accepted the intervenor's assertion in a brief that it "would pursue . . . the claims already raised in this action, or any claims that may become apparent through discovery" as meeting the requirement.  In *U.S. ex rel. Frank M. Sheesley Co. v. St. Paul Fire & Marine Ins. Co.*, 239 F.R.D. 404, 412 (W.D.Pa. Nov. 7, 2006), the court accepted a motion for stay and to compel arbitration, which accompanied a motion to intervene, as enough to meet the pleading requirement.

9

The Second Circuit's only decision on this issue found that references to the allegations of the original complaint were insufficient. *Abramson v. Pennwood Inv. Corp.*, 392 F.2d 759, 761 (2d Cir. 1968). But that decision appears to have been influenced by the special pleading requirements for shareholder derivative actions in Rule 23(b). *Id.*

Courts describe the purpose of Rule 23(c) as informing the parties of the movant's position. "Where . . . the position of the movant is apparent from other filings and where the opposing party will not be prejudiced, Rule 24(c) permits a degree of flexibility with technical requirements." *Tachiona* at 393 n.8. "Although [the movant's failure to file a pleading] . . . does not comport with Rule 24, [the movant] has submitted affidavits and briefs which set forth sufficient facts and allegations to give all parties notice of its claims." *Werbungs* at 874. "[W]aiver of the pleading requirement is justified here because the [movant's] position on this litigation is clearly articulated in its motion papers." *Blesch v. Holder*, No. 12-cv-1578, 2012 WL 1965401, at *1 (E.D.N.Y. May 31, 2012). The Moore treatise gives that purpose and another: to enable the court to evaluate the motion to intervene: *Moore's Federal Practice* § 24.20 (3d ed. 2010) 24-82. As Professor Moore rather grudgingly concedes, courts sometimes reason that the parties' fair and thorough notice of the intervenor's situation and perceived needs excuse a failure to comply with the pleading rule. Moore § 24.20 at 24-82.

In this case, both of these purposes have already been served; the Court is familiar enough with the issue to evaluate the Motion, and the parties have made meaningful responses to it. Under these circumstances, denial of the Motion would be too strict a response. Also, the fact that the City has not filed an Answer has made it impossible for the Movants to adopt the Answer as their pleading. However, Rule 24(c) should not be ignored permanently. The Court will not require the

Movants to file a pleading at this time, but it directs the Movants, within 10 calendar days after the filing of an Answer by the City, to either file and serve a statement adopting the City's Answer, or file their own pleading.

### C.      Do the Movants' interests justify intervention as of right?

Having rejected the parties' procedural objections, the Court now turns to the question of whether the Movants have asserted interests that justify intervention as of right.  To reiterate: In order to intervene as of right, a party that has filed a timely motion must establish that: (1) it claims an interest relating to the property or transaction that is the subject of the action, (2) it is so situated that disposing of the action may as a practical matter impair its ability to protect its interest, and (3) the interest is not adequately represented by existing parties.  Rule 24(a)(2).  Failure to satisfy any one of these requirements is a sufficient ground to deny the application.  *Sec. Pac. Mortg. & Real Estate Servs., Inc. v. Republic of Philippines*, 962 F.2d 204, 208 (2d Cir. 1992).

It is evident from the face of the Motion that the first element is satisfied; but Plaintiff and the City argue that the second and third elements are not.  Because the Movants assert that different members of their group have overlapping but distinct interests, it is useful to proceed by dividing the Movants' asserted interests into three groups: (1) the common interests of all Movants, (2) the interests specific to those Movants who took the 2003 lieutenant examination (the "Lieutenant Exam Group"), (3) those specific to those Movants who took the 2003 captain examination (the "Captain Exam Group"), (4) those specific to Patton, and (5) those specific to Marcarelli.

### 1.      *Common interests*

In the Motion, the Movants assert that they have several common interests at stake in this action.  First, they assert an interest in protecting the judgments and relief they obtained in *Ricci*.

11

Motion at 3-4.  Plaintiff, however, argues that the Second Circuit's earlier ruling in this action makes it impossible for him to obtain any remedy that would impair the relief that the Movants obtained in *Ricci*.  Pl. Memo. at 3.  Plaintiff cites the purported clarification that the Second Circuit addressed to the *Ricci* plaintiffs:

> Although we hold that Briscoe's claim can proceed, the *Ricci* plaintiffs of course remain entitled to the full fruits of the Supreme Court judgment that they obtained.  In order to give effect to bedrock principles of nonparty preclusion as well as the Supreme Court's order to certify the results [of the 2003 test], we limit Briscoe's equitable relief insofar as it may interfere with the relief–present and future–afforded to the *Ricci* plaintiffs by the certification of the exam results.

*Briscoe v. City of New Haven*, 654 F.3d 200, 209 (2d Cir. 2011).

This Court, which is bound both by the Supreme Court's decision in *Ricci* and by the Second Circuit's quoted instruction on remand in this case, will not grant any relief which impairs the relief the Movants obtained in *Ricci*.  The first asserted interest does not justify intervention.

Second, the Movants assert that they have an interest in protecting the collective bargaining agreement (CBA) between the City and firefighters' union.  Motion at 4-5.  However, the Movants do not set forth any legal basis for their claim of authority to enforce a CBA.  The general is rule that only the union can litigate violations of such agreements.  *See Gutierrez v. United Foods*, 11 F.3d 556, 559 (5th Cir. 1994).

Third, the Movants assert an interest in avoiding and opposing a violation by the City of the provisions of 42 U.S.C. § 2000e-1(l), the statute that bans "race-norming," and the Equal Protection Clause of the U.S. Constitution.  Motion at 5-6.  Similarly, they seek a ruling that the disparate-impact statute, 42 U.S.C. § 2000e-2(k), is unconstitutional.  Motion at 7.  However, an interest in

seeing the law obeyed, without an individual "injury in fact," does not support intervention as of right. *N.Y. News, Inc. v. Kheel*, 972 F.2d 482, 486 (2d Cir. 1992).

Fourth, they assert that they have an interest in avoiding the "chaos" that could result from relief granted in this action. Motion at 5. Such chaos, they claim, would stall their careers.  Here, the Movants' position is unclear.  While individual categories of Movants assert an intent to pursue promotion that would be affected by relief in this action, *see infra*, no such assertion is made on behalf of the five Movants who are not in any of the other groups (Carbone, Gambardella, Jooss, Scanlon and Vargas).  The Movants do not explain why the careers of those five firefighters would be affected by this "chaos."

None of the asserted common interests is clear and cognizable.  The five Movants who are not in any of the other groups lack asserted interests that would justify intervention.

### 2. *Interests of the Lieutenant Exam Group*

The eight members of the Lieutenant Exam Group (Blatchley, Boivin, Christoforo, DiVito, Durand, Parker, Ricci and Mark Vendetto) were promoted after taking the 2003 lieutenant exam. They assert certain interests in this action particular to them.

First, they assert reputational interests, which they claim would be damaged by a liability finding in this action.  Motion at 8-9.  A liability finding, they say, would imply that they did not earn their promotions on merit, and thus "diminish the movants' status, stain their badges, impugn their professional standing, and result in their being held up to derision and scorn in their workplace and in their profession at large."  *Id.* at 8.  However, they offer no reason why anyone would draw the conclusion that they were not promoted on merit from a finding of disparate impact.  Reputational interests do not justify intervention where the court's action could not reasonably bear the negative

interpretation asserted. *Wood v. Standard Prods. Co.*, 671 F.2d 825, 832 (4th Cir. 1982) (the movant's concern that a finding of negligent professional conduct on his part would damage his reputation did not justify intervention, because the finding was based only on the plaintiff's affidavits and the defendant's procedural default).

Second, they assert that a grant of promotion and retroactive seniority to Plaintiff would deprive them of relative seniority. Motion at 9. The Second Circuit held in *Brennan* that the loss of relative seniority justifies intervention. *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 131-33 (2d Cir. 2001). "[T]he effects of a loss of relative seniority rights should not be regarded as too speculative and remote to justify intervention save, perhaps, in a case where a concrete effect on an employee is impossible." *Id.* at 132 (footnote omitted). Here, concrete effects on the members of the Lieutenant Exam Group are possible. The Movants assert, and the parties do not dispute, that seniority in rank plays a significant role in the operations of the NHFD. "It governs shift assignments, opportunities to serve as acting captain (which brings higher monetary compensation), and firehouse assignments." Motion at 9.

Third, they assert that the promotion of Plaintiff to lieutenant would increase the pool of candidates competing for promotion to captain and thus might affect future promotions. *Id.* at 9-10. The *Bridgeport Guardians* court discussed a similar issue. One of the movants in that case, Hoben, asserted that he intended to apply for a position at the next hiring examination. The court applied the Supreme Court's decision in the contracting context from *Adarand Constructors, Inc. v. Peña*, 515 U.S. 200 (1995), which held that a petitioner who asserted that he was likely to bid on future contracts had standing to challenge the contractor bidding framework. The Second Circuit held that Hoben likewise could intervene based on his intention to apply for future positions. *Bridgeport*

14

*Guardians* at 475.  On another occasion, the Second Circuit held that movants' expectations of future promotions justified intervention for the purpose of arguing against a settlement, though it did not justify intervention that would require their consent for a settlement.  *Kirkland v. N.Y. State Dep't of Corr. Servs.*, 711 F.2d 1117, 1126 (2d Cir. 1983).

This is certainly a contingent interest, as it would only arise if Plaintiff does seek promotion to captain and would only affect the Lieutenant Exam Group if Plaintiff displaces one of them.  If there are many applicants for a captain position, the probability that the addition of one more will affect the Lieutenant Exam Group is small.  Still, the possibility is similar to the possibility that the Second Circuit found adequate in *Bridgeport Guardians*.

Also, the Second Circuit's order that no relief be granted that "interfere[s] with the relief–present and future–afforded to the *Ricci* plaintiffs by the certification of the exam results," *Briscoe*, 654 F.3d at 209, does not mean that no relief can be granted in this action that in any way harms the interests of the Movants.  It establishes that no remedy can be granted that interferes with relief afforded *by the certification of the exam results*.

The remedies that Plaintiff seeks are not so limited.  In the Amended Complaint [Doc. 7], Plaintiff seeks, *inter alia*, an injunction directing that he be considered immediately eligible for promotion to the rank of lieutenant, an injunction requiring the City to use a new selection system for promotions to vacant lieutenant positions, and "[a]ppropriate equitable relief."  Amended Complaint at 7-8.  There is nothing in the Amended Complaint to guarantee that no remedy can be granted other than remedies involving the certification of the exam results.  Thus, the members of the Lieutenant Exam Group do have interests in this action that are similar to the interests that were considered sufficient to justify intervention in *Brennan* and *Bridgeport Guardians*.

### 3.    *Interests of the Captain Exam Group*

The members of the Captain Exam Group (Kottage, Michaels, Riordan and John Vendetto) took the 2003 captain examination, were not promoted, and assert that each of them intends to take the next captain examination.  The interest they assert is one of the interests also asserted by the Lieutenant Exam Group: a remedy in this action could expand the pool of candidates with whom they would compete in such an examination by adding Plaintiff.  Motion at 10-11.  As noted above, that interest is similar to interests found adequate in *Brennan* and *Bridgeport Guardians*, and justifies intervention.

### 4.    *Interest specific to Patton*

At oral argument on the Motion, counsel for the Movants stated that "Sean Patton . . . is the one candidate of the *Ricci* plaintiffs who was not promoted to Lieutenant and thus seeks to compete for the very vacancy that Mr. Briscoe seeks to occupy."  Transcript at 8-9.   Plaintiff's relief in this action might promote him to the same vacancy, making it impossible for Patton to compete for it. *Id.* at 15-16.

Plaintiff replies that he is not seeking to displace any other candidate, but rather asks to be placed in one of the additional vacancies that have arisen since 2006 and would not otherwise have been filled from the 2004 list.  Plaintiff's Supplemental Memorandum in Opposition to Motion to Intervene [Doc. 132] at 5.  This argument does not persuade.  Whichever  vacancy is at issue, Patton may want to apply for it, which he cannot do if the Court has awarded it to Plaintiff.  Patton's interest is contingent, in that it would arise only if the Court adopts an order to promote Plaintiff as a remedy.  But it is no more contingent or unlikely than the interest accepted by the *Bridgeport Guardians* court when it held that Hoben's intervention was justified based on his stated intent to apply for a position

the next time the defendant held a hiring examination. *Bridgeport Guardians* at 475. The likelihood that relief afforded Plaintiff will prevent Patton from obtaining a vacant lieutenant position justifies his intervention.

#### 5.     *Interest specific to Marcarelli*

At the same oral argument, counsel for the Movants discussed Marcarelli's interest in this action. "Matthew Marcarelli . . . intervened when – he was in the middle of 12 hours a day studying and preparing for the director of training exam and as that exam was approaching, the plaintiff in this case filed a motion seeking to stop that exam from going forward or his principal request was to gain a court order allowing him to compete in the exam." Transcript at 9. The plaintiff's effort was unsuccessful, but the Movants' counsel observed that "I don't know if Mr. Briscoe was going to claim if he wins that that means he should have been allowed to compete for director of training and therefore, Captain Marcarelli is illegally occupying it because he had the right to apply for [that position]." *Id.* at 10.

The City asserts that Marcarelli cannot be affected by Plaintiff's relief, because he has already been promoted to Director of Training and thus will not face future competition from Plaintiff. Defendant's Brief Regarding Intervention ("City Jan. 31 Memo.") [Doc. 133] at 11. That leaves, however, the question of whether relief for Plaintiff might include a holding that Marcarelli is not properly occupying the position of Director of Training.  The relief Plaintiff requests includes "[a]ppropriate equitable relief." Amended Complaint [Doc. 7] at 8. Plaintiff has not stated that he seeks such relief, but neither do the pleadings in this action preclude such relief. While the question is a close one, this interest is substantial enough to justify intervention.

17

**D.       Are the Movants' interests adequately represented by the City?**

The City argues that it represents the Movants' interests adequately in this action.  City Memo. at 2; City Jan. 31 Memo. at 15-16.  The City argues that it and the Movants "share the same ultimate objective – to preserve the *Ricci* judgment, defeat Plaintiff's disparate impact claim and limit the relief, if any, available to the plaintiff." *Id.* at 16.  The City has not, however, provided a reason to believe that it shares the Movants' specific interests in avoiding any remedy that affects the Movants' future opportunities.  The City opposes any remedy in this action, but if a remedy is granted, it is not clear that the City has incentives to litigate against a remedy harmful to the Movants.

The Movants also observe that the City has failed to make two arguments against Plaintiff's claims: that the disparate impact statute is unconstitutional, and that Plaintiff cannot show statistically significant disparate impact under these facts.  Motion at 7-8; Reply Memo. at 7-8.  The City concedes that it does not and will not make the constitutionality argument, on the grounds that "that argument is a loser."  Transcript at 90.  The City argues that the Supreme Court has passed up many opportunities to hold disparate impact liability unconstitutional. *Id.*  However, the present Motion is not the place for the Court to decide the merits of the constitutionality argument.  In any event, the absence of the constitutionality argument in the record of this case to date illustrates the potential divergence between the Movants' interests and the City's.  The City is unlikely to make an argument that thoroughly contradicts its litigation stance in *Ricci* and its policies generally.  This factor militates in favor of intervention.

Plaintiff and the Movants have devoted considerable energy to arguing about whether the facts here show a statistically significant disparate impact.  Reply Memo. at 7-8; Plaintiff's Surreply

18

Re: Disparate Impact [Doc. 191] *passim*; Putative Intervenors' Reply to Plaintiff's Surreply [Doc. 192] at 1-4.  However, the merits of Plaintiff's claims are not currently before the Court.  For example, the *Brennan* court rejected an argument that went to the merits of the matter while ruling on the motion to intervene, noting that "[t]he merits can . . . be resolved only after appellants have an opportunity for discovery and the presentation of evidence as a party to this action." *Brennan* at 129-30.

After the Movants and the City fought a seven-year-long legal battle in *Ricci* over issues that overlap substantially with the issues in the present action, it comes as no surprise that the Movants doubt the City's ability to represent their interests fully.  The Court finds that the inadequate-representation requirement for intervention is satisfied.

### E.      Would intervention prejudice the City?

The City also argues that intervention would prejudice it.  City Jan. 16 Memo. at 16-17.  The one concrete prejudice that the City mentions is that it would be required to "invest significant time and resources litigating issues such as the constitutionality of Title VII." *Id.*  While the addition of new litigants to an action necessarily adds to the resources that the parties must devote to the action, the City has not identified a prejudice severe enough to justify preventing the Movants from intervening to protect their interests.

### F.      Should the Motion be decided at a later stage of the case?

The City argues that the Court need not decide intervention now.  Transcript at 86-87.  It presents two other options: (1) decline intervention now and permit a renewed motion to intervene at the remedy stage, and (2) put off resolving the intervention issue pending briefing on the City's Renewed Motion to Dismiss [Doc. 201].  *Id.* at 87.  However, to put the issue off at present would

not serve judicial economy or economy in the use of litigants' resources.  The Movants and the parties have filed, to date, twenty-eight documents– motions, briefs, and proposed intervenor pleadings– on the intervention issue, starting with the filing of Patton's original Motion to Intervene [Doc. 30] on December 23, 2009.  At this point, this litigation will be best served by a ruling that puts this issue to rest.

## IV.     Conclusion

Professor Moore's treatise, after reciting the three requisite criteria for intervention as of right and observing that "failure to satisfy any one of the criteria justifies denial of an application to intervene," says immediately thereafter: "Rule 24 is to be construed liberally, however, and doubts resolved in favor of the proposed intervenor." *Moore's Federal Practice* § 24.03[1][a] (3d ed. 2010) 24-22.  One of the cases Moore cites in a footnote supporting those propositions is *Federal Savings and Loan Insurance Corp. v. Falls Chase Special Taxing District*, 983 F.2d 211, 216 (11th Cir. 1993), where the Eleventh Circuit said:

> The proposed intervenors' burden to show that their interests *may* be inadequately represented is minimal.  Any doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors because it allows the court to resolve all related disputes in a single action.

citations omitted; emphasis in original).

This case, pending before this Court, demonstrates the existence of continuing disputes, uncertainties and tensions among New Haven's firefighters.  Those disputes arise directly out of the City's 2003 examination for the promotion of firefighters to the coveted ranks of lieutenant and captain.  Meaning no criticism of those who crafted it, the 2003 examination may be analogized to Pandora's Box: fling it open, and swarms of contentious firefighters emerge.  This harms the public

interest.  The City's brave firefighters are the first line of defense when citizens' lives and property are threatened by fire, and in this regard at least, the distractions and potential animosities among firefighters as a result of this continuing litigation are deplorable.

Whatever may be said in praise or criticism of the Supreme Court's decision in *Ricci*, the Court accurately foretold the future when it ruminated about the effect of the *Ricci* decision "[i]f, after it certifies the results, the City faces a disparate-impact suit," 129 S.Ct. at 2681.  Briscoe's disparate-impact suit, the case at bar, was inevitable: it followed the Court's decision in *Ricci* "as the night the day,"[5] a reality the Second Circuit recognized when it said that "Briscoe brings the anticipated lawsuit," 654 F.3d at 202.

Able and articulate counsel for Briscoe and the City demonstrated by the vigor of their advocacy the powerful preference of their clients that these proposed intervenors not be allowed to join and participate in this case.  Counsel for the proposed intervenors, equally able and articulate, argued with equal force that intervention as of right must be allowed.  At the hearing, counsel were not constrained by strict time limits and had full freedom of rebuttal: their arguments were lengthy, thorough, wide-ranging, and helpful to the Court.  At the end of the day – or perhaps it is better to say at the end of *this* day in the litigation, there will be others – and following established authority, I construe Rule 24(a)(2) liberally, and resolve any lingering doubts that may exist in favor of the proposed intervenors.  Having performed those exercises, I will allow intervention as of right to certain of the proposed intervenors, because the litigation claims asserted by Plaintiff Briscoe have triggered claims by certain intervenors of actual or reasonably potential adverse effects.  All these

---

[5]  "And it shall follow, as the night the day, Thou canst not then be false to any man." *Hamlet*, Act I, scene iii, line 75.

21

disputes are "related" in the sense intended by the Eleventh Circuit in *Federal Savings*, since they have a common ancestor in and all proceed from the City's 2003 examination.  It is more efficient for the Court, and more fair to all individuals concerned, to have these related disputes resolved in a single action.

Quite apart from these conclusions, which I reach on my own with no particular difficulty, I believe that the Second Circuit's holdings and rationales in the *Bridgeport Guardian* and *Brennan* cases require me to allow intervention as of right to these proposed intervenors.  Briscoe and the City may take some comfort from the facts that this Ruling and Order allowing intervention as of right is appealable, and the Court of Appeals' standard of review is *de novo*.

Not all of the present group of Movants for intervention will be allowed to intervene.  The reasons for the distinctions and differing results are as follows:

Fourteen of the Movants (all but Carbone, Gambardella, Jooss, Scanlon and Vargas) have established that they possess interests in the outcome of this matter that justify intervention as of right, and the Court finds no bar to their intervention.  The parties have not established that granting only limited intervention rights would be advantageous.  Consequently, the Motion to Intervene [Doc. 148] is GRANTED as to Blatchley, Boivin, Christoforo, Divito, Durand, Kottage, Marcarelli, Michaels, Parker, Patton, Ricci, Riordan, John Vendetto and Mark Vendetto and DENIED as to the other Movants.

However, for the reasons stated *supra,* and pursuant to Rule 24(c), the Court's Order allowing intervention is conditioned upon the permitted Intervenors, upon the filing of an Answer by the City,

filing within the time specified a statement adopting the City's Answer, or alternatively, filing their

own pleading.  Failing timely compliance with that direction, the Order allowing intervention will

be vacated.

It is SO ORDERED.

Dated: New Haven, Connecticut
October 5, 2012

                                    */s/ Charles S. Haight, Jr.*
                                    Charles S. Haight, Jr.
                                    Senior United States District Judge