## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

_____

|   |   |   |
|---|---|---|
| MICHAEL BRISCOE, | : | |
| Plaintiff, | : | |
| | : | 3:09-cv-1642 (CSH) |
| v. | : | |
| | : | NOVEMBER 14, 2013 |
| | : | |
| CITY OF NEW HAVEN, | : | |
| Defendant. | : | |

_____ :

## RULING ON PLAINTIFF'S MOTION FOR LEAVE TO AMEND

**HAIGHT, Senior District Judge:**

In a Ruling reported at 2013 WL 4780097 (D.Conn. Sept. 9, 2013) (*Briscoe I*), familiarity with which is assumed, the Court granted the motions of Defendant City of New Haven and certain Intervenors to dismiss the Third Amended Complaint filed by Plaintiff Michael Briscoe, an African-American firefighter employed by the City, who sued the City under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.  The Court held that Briscoe's action, "while not time barred, must be dismissed on substantive grounds," specifically, "that the Plaintiff in this case has not pleaded a prima facie Title VII claim."  2013 WL 4780097, at * 26-27.

Plaintiff has now filed a Motion [Doc. 286] for leave to file a Fourth Amended Complaint, in the form submitted as Doc. 286-1.  Defendant City has filed an Objection [Doc. 288], as have the Intervenors [Doc. 289].

1

## BACKGROUND AND PRIOR PROCEEDINGS

In the procedural posture of the case, Plaintiff requires leave of the Court to amend his complaint further.  The motion falls under Rule 15(a) of the Federal Rules of Civil Procedure.  In keeping with the tradition of parties seeking leave to amend their pleadings, Plaintiff relies upon the seminal case of *Foman v. Davis*, 371 U.S. 178, 182 (1962), where the Court said:

> In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be "freely given."

As a careful reading of this much-quoted language reveals, it cuts both ways.  In the case at bar, the City and the Intervenors contend that allowing Briscoe to file a Fourth Amended Complaint should be rejected for several of the reasons *Foman* gives for denying leave to amend.

Those reasons share a common theme: that Briscoe's proposed Fourth Amended Complaint (sometimes "FAC") asserts a Title VII claim which, the City and Intervenors claim, is not only different from but is also inconsistent with a series of his earlier iterations of that claim.  That difference and inconsistency, the City and Intervenors contend, require that the proposed amendment be refused.  Plaintiff  denies that any material differences or inconsistencies exist between his proposed FAC and what he has been claiming all along.  These quarreling perceptions require a careful review of the history of the case, now a rather lengthy one.

That review focuses necessarily upon the nature and  phrasing of the Title VII claim which in one form or another Briscoe has asserted against the City throughout the case.  I preface a recitation of those assertions in chronological order by recalling that in *Briscoe I,* the Court granted

2

the City's and Intervenors' motions to dismiss the Title VII claim Briscoe pleaded in his Third

Amended Complaint (sometimes "TAC"): the predecessor pleading to the proposed fourth version

of the complaint.   During the course of that opinion, I had occasion to describe with some

particularity the claim Briscoe was asserting against the City:

> I conclude that the Plaintiff in this case has not pleaded a prima
> facie Title VII claim. Stripped of conclusory rhetoric and distilled to
> reveal its essence, Briscoe's complaint is really about the 60/40
> weighting's adverse impact upon him personally, not a disparate
> impact upon African American firefighters. . . . Briscoe's charge
> against the City, first expressed in his CHRO–EEOC charge and now
> in the TAC, was then, now is, and always has been the unfairness
> visited upon him by the 60/40 weighting of the written and oral
> exams. One must surmise that Briscoe thinks the oral exam, in which
> he excelled, was job-related and beyond reproach. . . . The case for
> Briscoe comes down to this: The 2003 exams should be "scored
> properly," and the way to do that is to disregard or alter the 60/40
> weighting, thereby transforming Briscoe's promotion prospects. That
> conviction, however sincerely, forcefully or passionately held, does
> not support a Title VII claim of disparate impact on the basis of race.

2013 WL 4780097, at *26-27.

On October 5, 2009, Briscoe first claimed the City discriminated against him in violation of

Title VII when he simultaneously filed an administrative charge with the CHRO and the EEOC.  The

record shows that Briscoe had the assistance of counsel when that charge was drafted and forwarded

to the agencies: when several days later the CHRO returned the form without taking action on it, on

the ground that it was filed prematurely, the document was mailed back to the office of present

counsel for Plaintiff.  Briscoe's administrative charge of discrimination stated in full as follows:

> The City of New Haven is about to certify a promotional
> employment list for the position of fire lieutenant.  My position on the
> list (24) is much lower than it should be.  The reason is a selection
> process that discriminates against African American candidates, in
> violation of Title VII of the Civil rights Act of 1964, as amended.

> The promotional examination was not job related and had a disparate impact on African American candidates.  In particular, the written portion of the examination was not job related and had a disparate impact and the system for weighting the two components of the test, oral and written, was not job related and had a disparate impact.

Doc. 237-2 ("Charge of Discrimination," Commission on Human Rights & Opportunities, West Central Region and EEOC), p. 2.

Before the EEOC had time to consider this charge of discrimination, counsel for Briscoe asked that agency to issue a right-to-sue letter.  The EEOC  complied [Doc. 237- 5].   On October 15, 2009, Briscoe filed his Original Complaint in this action [Doc. 1].  Paragraphs 1, 3 and 4 of the Original Complaint undertake to state with particularity and in detail the precise nature of the claim of discrimination Briscoe was making against the City.  Given the issues raised by  Briscoe's present opposed motion to file his proposed FAC,  I will quote the allegations in those three paragraphs in full.

Paragraph 1 of the Original Complaint is captioned "Introduction."  It read as follows:

> 1. The 2003 New Haven fire lieutenant examination had two parts: a multiple-choice written test and an oral exam.  Ranking on the eligibility list depended on how the City chose to weight the scores on the two components.  The oral exam was a better way to assess candidates' skills and abilities than the written test and had less disparate impact on African-Americans.  Yet the City chose to weight the written test 60 percent and the oral exam 40 percent.  This weighting reduced the validity of the overall selection process; it was arbitrarily chosen, without any pretense that it was job related; it was contrary to standard practice among similar public safety agencies, where the norm is to weight the oral component 70 percent; it had a disparate impact on African-American candidates; and it will prevent the plaintiff from being promoted to the rank of lieutenant, even though he is one of the most highly qualified candidates.

Paragraphs 3 and 4 of the Original Complaint alleged as follows:

 3.   The plaintiff is a New Haven firefighter who took the 2003 lieutenant examination.  He is African-American.  He demonstrated superior qualifications for promotion by achieving the top score of all the candidates on the oral exam, but because of the 60/40 written/oral weighting he will not be eligible for promotion.  Because the City did not disclose the scores of any named candidates for years after the examination, the plaintiff until recently did not know his overall examination score, his rank on the uncertified lieutenant list, or the effect of the 60/40 weighting on his promotional opportunities.

 4.   The City of New Haven is a municipal employer subject to Title VII.  Unless enjoined by this court it will use the 60/40 weighting to exclude the plaintiff from the lieutenant position despite his outstanding qualifications.  At civil service hearings and in the *Ricci v. DeStefano* litigation the City criticized the work of its hired consultant, but it never addressed, much less questioned, the job relatedness of its own choice of the 60/40 weighting.  Likewise, the City suggested changing the weighting after it had already administered the examination and had been taken to court for refusing to certify the results, but it did not acknowledge that it should never have used the 60/40 weighting in the first place.

On November 2, 2009, Briscoe filed an Amended Complaint [Doc. 7] which, given the case's subsequent history, I will call the First Amended Complaint.  Because the Defendant City had not yet answered or filed a motion, Plaintiff did not require leave of Court under Rule 15 to file this amendment.

The wording of ¶¶ 1, 3 and 4 of the First Amended Complaint is exactly the same – word for word – as that of ¶¶ 1, 3 and 4 of the Original Complaint.

On March 1, 2010, Briscoe filed a motion [Doc. 63] for leave to file what I will call a Second Amended Complaint.  That application was prompted, according to the Motion at 1, by the fact that "[t]he City has just disclosed a document showing that the 2003 test was not actually scored in the way that was announced."  The proposed amendment sought to add allegations relating to two claims: First, "Allegations Relating to the City's Violation of its Charter, Civil Service Rules, and

Announced Weighting System"; and Second, "Additional Factual Allegations" which relate solely to the Title VII discrimination claim previously pleaded by Plaintiff in the two earlier complaints. Thus, the additional allegations in this second group included the following:

> 19. The City began to use the 60/40 weighting system more than 20 years ago.

> 20. Since that time the weighting has consistently had a disparate impact on African American candidates and yet the City has never made any effort to validate the weighting or to change it.

> 21. The City intends to continue using the weighting without regard to whether it is job related, even though the City knows that it has a disparate impact on African American candidates and knows that it has no evidence that the weighting is job related.

Plaintiff's description of the proposed Second Amended Complaint contained no indication that there would be any changes in ¶¶ 1, 3 and 4 of the Original Complaint and First Amended Complaint, and of course the three proposed additional allegations just quoted are consistent only with the discrete and narrow Title VII discrimination claim previously pleaded, confined to the deplorable effect of the 60/40 written/oral weighting.

In the event, the Court never ruled upon Briscoe's motion to file a Second Amended Complaint because I granted the City's motion to dismiss the First Amended Complaint on the ground that the Supreme Court's decision in *Ricci* precluded Briscoe's Title VII claim. In that circumstance, I denied as moot Briscoe's motion to file a Second Amended Complaint. 2010 WL 2794212, at *11-12. The Second Circuit reversed that dismissal of the action, and remanded the case to this Court for further proceedings, the Court of Appeals' opinion making clear that its ruling applied only to the *Ricci* preclusion question, and the District Court should consider in the first instance whether Briscoe's Title VII claim against the City was time-barred or lacking in substance.

6

*See Briscoe v. City of New Haven*, 654 F.3d 200 (2d Cir. 2011).

Following remand, Briscoe, having moved for and received leave, filed a Third Amended Complaint ( sometimes "TAC") [Doc. 199-2] on September 6, 2012.  This version of the pleading made no substantive changes in ¶¶ 1, 3 or 4 in the Original Complaint and First Amended Complaint.  The only change to ¶ 1 was in the last sentence: the earlier allegation that the 60/40 weighting "**will prevent** the plaintiff from being promoted" was changed to "**prevented** the plaintiff from being promoted," to reflect intervening events.   The only alteration in ¶ 3 was to change the phrase in the last sentence "the plaintiff **until recently** did not know his overall examination score" to "the plaintiff **until 2009** did not know his overall examination score."  Paragraph 4 of the earlier pleadings included the sentence: "Unless enjoined by this court it [the City] **will use** the 60/40 weighting to exclude the plaintiff from the lieutenant position despite his outstanding qualifications." The TAC changed that sentence to: "It [the City] **used** the 60/40 weighting to exclude the plaintiff from the lieutenant position despite his outstanding qualifications."  Again, the only effect of the change was to reflect intervening events.  Aside from these non-substantive alterations, the wording of these paragraphs in the TAC was the same as in the Original Complaint and First Amended Complaint.[1]

On September 9, 2013, the Court filed its Ruling, *Briscoe I,* quoted *supra.  Briscoe I* denied the motions of the City and the Intervenors to dismiss Briscoe's TAC "as time-barred, whether by statute of limitations or laches."  2013 WL 4780097, at *28. The Ruling granted the motions to dismiss "for failure to state a federal claim upon which relief can be granted."  Briscoe's state law

---

[1]   The Court has added emphasis to the language cited in the paragraphs of the earlier amended complaints and the Third Amended Complaint to highlight and contrast the specific differences in language.

claims were dismissed without prejudice.  *Id.*, at *29.

On September 23, 2013, Briscoe filed the present motion for leave to filed a proposed Fourth Amended Complaint (or "FAC") in the form submitted [Doc. 286-1].  Paragraphs 1, 3 and 4 in the FAC differ in a number of ways from the wording of those paragraphs in the TAC and its pleading predecessors, as the following analysis demonstrates:

Paragraph 1 of the FAC, captioned "Introduction" as were the earlier versions, reads:

> In 2003, the City of New Haven administered an examination for promotion to fire lieutenant that it knew or should have known was not job related and was likely to have an unlawful racially disparate impact on African Americans.  Further, it administered the discriminatory exam in spite of the availability of reasonable alternatives.  Just as the City should reasonably have anticipated before it administered the examination, the examination did in fact have a racially disparate impact.  As a result, the Plaintiff Michael Briscoe, an African American, was passed over for a promotion despite his superior qualifications for the position of fire lieutenant.

These Introductory allegations in the Fourth Amended Complaint,  of core importance to the allegations that follow, are so different from the Introductions to the Original Complaint, First Amended Complaint, and Third Amended Complaint that the full extent of the differences are revealed only by placing the Introductions to the Third and Fourth Amended Complaints side by side and reading them in turn, an exercise I presently leave to the reader.

As for ¶¶ 3 and 4, I will set forth those paragraphs as they appear in the FAC. The FAC's additions, deletions or alterations to or from those paragraphs in the TAC are indicated in boldface. When wording included in the TAC is *deleted* from the FAC, those deletions appear in italics and in brackets.

> 3.  The plaintiff is a New Haven firefighter who took the 2003 lieutenant examination.  He is African American.  He demonstrated

8

superior qualifications for promotion by achieving the top score of all the candidates on the oral exam **by a substantial margin**, but because of **the written test and** the 60/40 written/oral weighting he was not eligible for promotion.  Because the City did not disclose the scores of any named candidates for years after the examination, the plaintiff until 2009 did not know his overall examination score, his rank on the uncertified lieutenant list, or the effect of **the written portion and** the 60/40 weighting on his promotional opportunities. **Because the City did not disclose the method of scoring the oral exam until 2010, the plaintiff did not know the basis for the state law claim until then.**

    4.  The City of New Haven is a municipal employer subject to Title VII.  It used **the test** [*the 60/40 weighting*] to exclude the plaintiff from the lieutenant position despite his outstanding qualifications.  At civil service hearings and in the *Ricci v. DeStefano* litigation the City criticized the work of its hired consultant [*but until the Supreme Court it never addressed, much less questioned, the job relatedness of its own choice of the 60/40 weighting.  Likewise, the City suggested changing the weighting after it had already administered the examination and had been taken to court for refusing to certify the results, but it did not acknowledge that it should never have used the 60/40 weighting in the first place.*] **and agreed the test had a disparate impact and was probably unlawful.**

In the face of these myriad additions, deletions, and alterations, one can only marvel at Plaintiff's unabashed statement (brief, Doc. 287 at 2) that the proposed Fourth Amended Complaint "closely tracks the Third Amended Complaint."  The core allegations of the FAC do not "track" those of the TAC at all, let alone "closely."  On the contrary: When the FAC undertakes to identify the City's specific employment or practice that caused a disparate racial impact, the FAC's language rejects and renounces the comparable passages in the TAC and its pleading predecessors.  Those prior pleadings alleged, repeatedly and in the clearest possible words, that the City's 60/40 written/oral weighting of the examination's two parts caused the disparate impact of which Briscoe complained.  The proposed FAC replaces the 60/40 weighting, as the cause of disparate impact, with

the test as a whole.  The new pleading accomplishes that exchange in the core allegations of ¶¶ 1, 3 and 4 by eliminating references to the 60/40 weighting entirely, or diluting them by preceding the phrase "60/40 weighting" with the phrase "the written test," giving the new phrase pride of place in describing the cause of Briscoe's failure of promotion.

The differences between the FAC and its predecessors, most recently the TAC, begin, appropriately enough, with the "Introductions" to the pleadings in ¶ 1.  A stranger to the case, reading those Introductions side-by-side, could be pardoned if he or she thought the pleadings were talking about different individuals.  The Introduction to the TAC, like its predecessors, identifies the 60/40 written/oral weighting as the sole cause of a disparate impact.  The Introduction to the FAC omits any reference to the 60/40 weighting, and speaks only in general terms of "an examination for promotion to lieutenant" that was allegedly not job related and likely to have a disparate impact on African Americans.[2]

Paragraph 3 of the TAC and ¶ 3 of the FAC each allege that Briscoe demonstrated "superior qualifications for promotion by achieving the top score of all candidates on the oral exam . . . " But Briscoe was not promoted.  It is the cause that must be identified by a complaint charging discrimination.  The TAC alleges: " . . . but because of the 60/40 written/oral weighting he was not eligible for promotion."  The FAC now  alleges " . . . but because of **the written test and** the 60/40

---

[2]   While classical music is not frequently analogized to a legal pleading such as a complaint, the dramatic differences in the Introductions to the pleadings at bar justify the observation that if Richard Wagner, temporarily returned to this earthly venue, re-composed the Overture to *Tannhauser*, changed its themes, and in particular eliminated the theme of the Pilgrim's Chorus, which begins the overture with tremulous strings and builds to a rousing full-throated orchestral conclusion, a concert goer who knew only that the program listed the *Tannhauser* Overture as one of the works to be performed, and heard what may be called the First Amended Overture, could be expected to look about in disappointment and dismay.

oral weighting he was not eligible for promotion."  Paragraph 3 of the TAC further alleges that a time came when Briscoe learned of "the effect of the 60/40 weighting on his promotional opportunities."  Paragraph  3 of the proposed FAC alleges that Briscoe learned of "the effect of **the written  portion and** the 60/40 weighting on his promotional opportunities."

In the differing versions of ¶ 3 of these complaints, the 60/40 weighting,  which  in  TAC ¶ 3 held the stage alone as the sole device the City used to exclude Briscoe from promotion and lone cause of the disparate impact and Briscoe's rejection for promotion, is joined in FAC ¶ 3 by the written test, and shouldered aside to a supporting causal role.  As for  the differing versions of ¶ 4, what with the italicized deletions in FAC ¶ 4 quoted *supra,* the 60/40 weighting, formerly the solo singer, is no longer even in the chorus, it is off the stage entirely – both references to the 60/40 weighting are deleted by FAC ¶ 4, and "the test" becomes the sole identified cause of Briscoe's exclusion.

When one considers the cumulative nature and effect of the additions, deletions and alterations in these three paragraphs of the Fourth Amended Complaint, as opposed to those paragraphs in Plaintiff's prior pleadings, I cannot accept that the Fourth Amended Complaint does no more than "track" the wording of the prior Third Amended Complaint, or that the only purpose of the proposed amendment is to help the Court understand what Plaintiff has been saying all along. The Fourth Amended Complaint is saying something quite different.

Plaintiff does not accept that he is saying anything different.  His Reply Brief [Doc. 290] asserts at 4: "But the Plaintiff's challenge to the exam as a whole – as distinct from challenges to its component parts – was included in prior complaints and memoranda."  I put aside the contents of whatever "memoranda" (a/k/a "briefs") this assertion may have had in mind; when a court considers

the meaning and sufficiency of a claim, it looks to the allegations of the complaint, not to the briefs

of counsel.  In support of Plaintiff's presently professed perception that a "challenge to the exam as

a whole" was "included in prior complaints," his Reply Brief at 5-6 cites only to ¶ 36 of the Third

Amended Complaint, which alleges:

> 36.  The 2003 lieutenant test had a disparate impact on African
> American candidates.  For example, 31.6% of the African American
> candidates passed, compared to 58.3% of the white candidates; 15.8%
> of the African American candidates were promoted, compared to
> 30.2% of the white candidates; all of the white candidates who were
> promoted were ranked ahead of all of the African American
> candidates who were promoted; the average difference in test scores
> between African American and white candidates was 8.1 points; and
> as noted in paragraph 6 above, this difference was largely due to the
> difference in written test scores. This disparate impact was unjustified
> and unlawful.

This is an unpersuasive *apologia* on the part of Plaintiff.  The first part of ¶ 36's extended

second sentence recites statistics which, while relevant in principle to a Title VII disparate impact

claim, are not sufficient to state that claim in practice: Plaintiff must still identify the specific

employment practice that caused a disparate impact.  Paragraph 36 performs that function in the

phrase with which its second sentence concludes: " . . . and as noted in paragraph 6 above, this

difference was largely due to the difference in written test scores."  That concluding phrase is

immediately followed by the last sentence in ¶ 36, which alleges: "This disparate impact was

unjustified and unlawful."  *What* disparate impact, the reader may inquire?  Plaintiff's answer is

found in the preceding  sentence: "this difference was largely due to the difference in written test

scores": an alternative way of identifying the 60/40 weighting as the cause of the disparate impact.

That construction is confirmed by ¶ 36's reference to ¶ 6 in the Third Amended Complaint, which

is concerned solely with the 60/40 weighting.

In ¶ 6,  Plaintiff criticizes the performance of IOS, the independent contractor which prepared the 2003 lieutenant exam.  Plaintiff alleges in that paragraph:

> IOS also knew based on its training and experience that the written test it provided would have a large disparate impact on African-American candidates.  It knew that the 60/40 written/oral weighting was not validated or job related.  It knew that increasing the weight of the oral exam would increase the validity of the examination as a whole.  And it knew that the greater weight given the written test, the greater would be the effect of that test's disparate impact on the African-American candidates.

One hears in these allegations the dominant *leitmotiv* that ran through all Plaintiff's iterations of claim until the proposed Fourth Amended Complaint: the 60/40 weighting was the cause of an illicit disparate impact.  That theme sounds again in the paragraphs immediately following ¶ 6 of the Third Amended Complaint.  Paragraph  7 alleges that "the City never asked IOS for any input on the advisability of using a written multiple choice test or the 60/40 weighting," and the City failed to request IOS to provide a promised technical report "that could have provided information about the disparate impact and validity of the 60 percent rule."  Paragraph 8 alleges that a scoring system "that gave greater weight to the oral portion of the test would have been more job related than the 60 percent weighting on the written test that the City imposed."

Lastly on this point, I will refer to the extended oral arguments of counsel for Plaintiff, the City and the Intervenors during a hearing before the Court on July 8, 2013.  Counsel were debating the motion by the City and the Intervenors, ultimately successful, to dismiss Plaintiff's Third Amended Complaint.  The arguments went on for several hours because the Court profits from the oral submissions of counsel as intelligent, committed and articulate as those in this case.  At one point in his presentation, counsel for Plaintiff said this:

> Incidentally, if one takes six out of 18, people, candidates, were eligible for promotion being black, the disparate impact is essentially zero.  That is what would be required essentially to eliminate the disparate impact.  That happens, you know, that just happened to fall that way, but it's a way of understanding that *the disparate impact really does originate in the written tests, as we've alleged*.

Transcript of Hearing at 134 (emphasis added).

Precisely.  As we have seen in the discussion *supra*, Plaintiff has always alleged that the way the City weighted the written tests – the original sin in the case  –  caused the disparate impact he complains of.  At least until today: Plaintiff now proposes to allege, in his Fourth Amended Complaint, that "the exam as a whole," not the 60/40 weighting, is the cause of a disparate impact that violates Title VII.

The question presented is whether the Court should allow that amendment.  The answer is entrusted to what judges prefer to call their sound discretion.  In this important and sensitive case, I have concluded that, in all the circumstances of the case and in the exercise of my discretion, I should deny Plaintiff's motion for leave to file the proposed Fourth Amended Complaint.  My reasons follow.

## DISCUSSION

### I

Plaintiff filed the present motion to further amend his complaint in September 2013.  While Rule 15(a) provides that leave to amend "shall be freely given when justice so requires," it is within the discretion of the district court to grant or deny leave to amend, and the court may deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.  *See McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200-201 (2d Cir. 2007) (citing *Foman*, 371 U.S.

14

at 182).

"When a moving party has had an opportunity to assert an amendment earlier, but has waited until after judgment before requesting leave, a court may exercise its discretion more exactingly." *State Trading Corp. Of India, Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir.1990). "[W]hile Rule 15 plainly embodies a liberal amendment policy, in the post-judgment setting we must also take into consideration the competing interest of protecting the finality of judgments and the expeditious termination of litigation." *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (citation and internal quotation marks omitted). That principle resonates in the case at bar, because Briscoe acknowledges in his pleadings that by 2010 he had acquired full knowledge of the manner in which the City administered and graded the examination. That was before Briscoe filed his Third Amended Complaint, in September 2012. In *Briscoe I* the Court granted the City's motion to dismiss that TAC and directed the Clerk of Court to close the case: the functional equivalent of a judgment. Plaintiff waited until after that judgment before requesting leave to assert a revised claim, based on facts known to Plaintiff for over two years (2010 to September 2013). Quite apart from the additional considerations the Second Circuit referred to in *Bellikoff,* such a passage of time is sufficient in itself to deny leave to further amend the complaint. *See Zahra v. Town of Southold*, 48 F.3d 674, 686 (2d Cir. 1995) (affirming the denial of a motion to amend the complaint that was filed two and one-half years after the commencement of the action).

Denial of the present motion to amend is particularly appropriate because Plaintiff is manifestly using the Court's ruling in *Briscoe I* as an advisory opinion informing him of the deficiencies of the Title VII claim he has always asserted, and thereafter seeking an opportunity to cure those deficiencies by pleading a different claim. Courts do not favor use of district court

15

decisions as "advisory opinions" for the purpose of Rule 15 amendment practice.  I did not coin the

quoted phrase; two able and experienced district judges have used it recently.

In *Eaton Vance Mut. Funds Fee Litig.*, 403 F.Supp. 2d 310 (S.D.N.Y. 2005), Judge Koeltl

dismissed the complaint of a putative class action brought by shareholders of mutual funds, alleging

violations of federal and state laws.  He gave the plaintiffs two opportunities to amend their original

complaint, and then dismissed the second amended complaint.  The Clerk entered judgment

accordingly.  Plaintiffs then moved for reconsideration of the dismissal, and "also moved to file a

third amended complaint."  403 F.Supp. 2d at 312.  Judge Koeltl refused to allow a further

amendment. He reasoned:

> The plaintiffs argue that despite having two previous opportunities to amend, they are entitled to amend after the Court has given guidance as to what the deficiencies in their SAC [second amended complaint] are.  However, plaintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies.

*Id*. at 318 (citation and internal quotation marks omitted).  That effort Judge Koeltl rejected in *Eaton*

*Vance* is precisely the same  attempted by Briscoe in the case at bar; his Motion for Leave to Amend

[Doc. 286] recites: "The purpose of the proposed amended complaint is to address what the Court

perceived as deficiencies in the complaint."[3]  On appeal from Judge Koeltl's opinion in *Eaton Vance*,

the Second Circuit quoted and made its own the reasoning of Judge Koeltl that I have just quoted.

*Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007).

In *Hutchison v. CBRE Realty Finance, Inc.*, No. 3:07CV1599, 2010 WL 1257495 (D. Conn.

March 25, 2010), Judge Underhill of this Court dismissed the plaintiff's second amended complaint

---

[3]  The Court "perceived" the deficiencies in Briscoe's Third Amended Complaint because they were there for all to see, as explained in *Briscoe I*.

in an action alleging violation of the federal securities laws.  Plaintiff moved for reconsideration, or in the alternative for leave to file a third amended complaint.  Judge Underhill denied both motions. In denying plaintiff leave to file another amended complaint, Judge Underhill noted that in *Bellikoff*, 481 F.3d at 118, the Second Circuit "cautioned against district courts providing plaintiffs with what amounts to an advisory opinion on the efficacy of the proposed amendments."  2010 WL 1257495, at *4.[4]

In the case at bar, Plaintiff is transparently using this Court's opinion in *Briscoe I* as an advisory opinion: specifically, explicit advice that the City's 60/40 written/oral weighting of the examination results fails in law to state a Title VII claim for disparate impact, and implicit additional advice that recasting the claim by substituting the "whole exam" as the cause of a Title VII violation might fare better.

Moreover, it is worth reiterating that, notwithstanding Briscoe's protestation that the FAC only "tracks" the language of the predecessor TAC, he seeks to assert a materially different claim. In *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135 (2d Cir. 2012), the Second Circuit held that to prevail on a disparate impact theory of liability, Title VII requires a plaintiff to "(1) identify a specific employment practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two."  685 F.3d at 151 (internal quotations and citations

---

[4]  On appeal, the Second Circuit affirmed Judge Underhill's ruling, *sub nom. Hutchison v. Deutsche Bank Secs., Inc.,* 647 F.3d 479 (2d Cir. 2011).  The court of appeals approved the district court's denial of plaintiff's motion to further amend the complaint, on the ground that the proposed third amended complaint was insufficient in law and hence futile, a recognized reason for denying leave to amend.  That is a somewhat different reason for denial than the rule disfavoring the use of an adverse district court opinion as an "advisory opinion" for the rejected pleader's guidance in drafting a further and different claim – a practice, illustrated by the case at bar, that one might designate as abuse of the Rule 15 amendment process.

omitted). In *Briscoe I*, I had occasion to point out that the statute relieves a plaintiff of the necessity of identifying a specific employment practice resulting in a disparate impact "if the complaining party can demonstrate to the court that the elements of a respondent's decisionmaking process are not capable of separation for analysis, the decisonmaking process may be analyzed as one employment practice." 2013 WL 4780097, at *23 (citing and quoting 42 U.S.C. § 2000e-2(k)(1)(B)(i)). I then went on to say:

> In the case at bar, Briscoe does not invoke that particular provision. Rather, he undertakes to isolate and identify a specific employment practice responsible for a disparate impact on African American firefighters: indeed, in his pleading and throughout the litigation he single-mindedly proclaims that practice and condemns its discriminatory effect. That practice is the City's choosing "to weight the written test 60 percent and the oral exam 40 percent," a choice which "had a disparate impact on African–American candidates" and "prevented the plaintiff from being promoted to the rank of lieutenant." I have quoted the Introduction to the Third Amended Complaint, where the 60/40 weighting is the Alpha of Briscoe's pleading; it is also the Omega, in ¶ 36 of the TAC, which alleges collectively that with respect to each statistical disparity between white and African American candidates, "this difference was largely due to the difference in written test scores." The City's 60/40 weighting of the written and oral exams is the source of all Briscoe's discontent.

*Id*.

Briscoe did not move for reconsideration of that ruling, although "clear error" is a recognized ground for granting reconsideration, *Hutchison*, 2010 WL 1257495, at *1 (citing cases), which would presumably include the trial court's completely misunderstanding what a litigant is doing or saying. I have no reason to doubt that this quoted description of the claim Briscoe asserted in his TAC was and is accurate; and it necessarily follows that the claim he asserts in his proposed FAC is a different one. Not the least of these differences is Briscoe's presently proclaimed premise that the elements

18

of the City's process in using the exam are not capable of separation for analysis, thereby permitting

him to identify the "whole test" as the discriminatory employment practice, whereas up until the

Court decided *Briscoe I*, he focused his criticisms solely upon the wholly separate element of the

60/40 written/oral weighting.

I am instructed by recent Second Circuit cases to disapprove the advocate's maneuver of

playing off a trial court's adverse ruling of dismissal, transforming it into an "advisory opinion," and

using that judicial "advice" in aid of a restructured claim intended to raise the case like Lazarus.  It

is instructive to note that in *State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*, 921

F.2d 409 (2d Cir. 1990), the Second Circuit quoted with approval the Fifth Circuit's statement in

*Freeman v. Cont'l Gin Co.*, 381 F.2d 459, 469 (5th Cir. 1967), that "[a] busy district court need not

allow itself to be imposed upon by the presentation of theories seriatim."  921 F.3d at 418.  I will not

allow that imposition in the case at bar.  Moreover, allowing the proposed Fourth Amended

Complaint would also be an unfair and prejudicial imposition upon the City of New Haven, which

during the lengthy course of this case has endured administrative uncertainties in the structuring of

the Fire Department, and incurred considerable legal expense.  The City is entitled to the finality of

the judgment-equivalent it obtained when the Court dismissed Briscoe's Third Amended Complaint

and directed the Clerk to close the case.[5]

---

[5]  That "finality" of judgment exists, of course, only in this Court.  Briscoe's able counsel,
who has had prior success in the Second Circuit on this case, can appeal *Briscoe I*'s dismissal of the
Third Amended Complaint for failure to state a claim.  That might provoke cross-appeals by the City
and the Intervenors, challenging this Court's holdings in *Briscoe I* that Briscoe's Title VII action was
not barred by the statute of limitations or by laches.  But all that is for another day, in another Court.

## II

Alternative reasons are urged for denial of leave to file the proposed Fourth Amended Complaint.  The City contends that the disparate impact claim the FAC asserts was not included in the administrative charge Briscoe filed with the EEOC and the CHRO.  If that is so, the claim is precluded in litigation, since "[i]n Title VII cases, the district courts have jurisdiction over only those claims reasonably related to the allegations in [plaintiff's EEOC] complaint." *Gomes v. Avco Corp.*, 964 F.2d 1330, 1334 (2d Cir. 1992) (brackets in original;  internal quotation marks and citation omitted).

The question is a close one.  Briscoe's EEOC charge, quoted in its entirety at pages 3-4, *supra*, referred in general terms to a promotional "selection process that discriminates against African American candidates," and then said: "The promotional examination was not job related and had a disparate impact on African American candidates.  In particular, the written portion was not job related and had a disparate impact and the system for weighting the two components of the test, oral and written, was not job related and had a disparate impact."  Doc. 237-2, p. 2.  "Particular" is a key word. *The New Roget's Thesaurus* (Putnam 1964) (Norman Lewis, ed.) tells us that synonyms for "particular" as an adjective include "individual, exclusive, peculiar, distinct, distinctive, special," and for "particular" as a noun, the synonyms are "item, specific, fact."  Thus in common English usage, the last sentence in Briscoe's EEOC charge, beginning with the phrase "In particular," may also be read as saying "Specifically," and what follows must be understood to be Briscoe's EEOC charge.  That charge is limited to the written portion of the exam and the exam's 60/40 weighting.  The main thrust of the charge is the weighting, since the alleged job-related defect of the written test is what on Plaintiff's theory made the weighting so prejudicial.  There is no complaint about the oral

component of the exam, in which Briscoe scored first of all candidates, and no complaint about the discriminatory effect of the examination as a whole.  Accordingly, there is considerable force to the City's argument that the "whole test" Briscoe now identifies in the proposed FAC as the cause of discrimination was not included in the EEOC charge, and consequently cannot be sued upon in this Court.

Briscoe's brief responds by pointing out that in *Gomes*, the Second Circuit also said: "In determining whether a particular claim is reasonably related to the plaintiff's EEOC complaint, we look not merely to the four corners of the often inarticulately framed charge, but take into account the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  964 F.2d at 1334 (internal quotation marks and citation omitted).  There is a certain irony and humor in Briscoe's dependence upon this holding: his EEOC charge was not "inarticulately framed" by a lay person untrained in the law, rather it was fashioned by able counsel experienced in this area; and an EEOC investigation could not have been reasonably expected to grow out of this particular charge, because counsel for Briscoe immediately asked the agency for a right-to-sue letter before any investigation could be started.  Nonetheless, I am bound by the Second Circuit's stated principles in cases of this nature, and while the question is not free from doubt, I conclude that the wording of Briscoe's EEOC charge does not preclude his effort to assert the claim contained in his proposed Fourth Amended Complaint.

But that conclusion of administrative non-preclusion has nothing to do with the fact that Plaintiff's proposed FAC seeks to assert a different claim, in circumstances which are discussed in Part II and are quite sufficient to require that this motion to amend be denied.

**III**

The final question for consideration is whether, in any event and without regard to the issues

discussed *supra*, the proposed FAC is futile and should be rejected for that reason.

In *Bellikoff*, 481 F.3d 110, and *Hutchison*, 647 F.3d 479, the Second Circuit affirmed denials

of leave to file amended complaints where the proposed amendments did not cure the pleading

deficiencies identified by the district judges in dismissing the earlier complaints.   In that

circumstance, the proposed amendment is regarded as futile, and is not allowed.  It is frequently held

that a proposed amended complaint should be rejected as futile if the proposed pleading would not

withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim.  *See, e.g., Oneida Indian*

*Nation of New York v. City of Sherrill*, 337 F.3d 139, 168 (2d Cir. 2003), *rev'd on other grounds*,

544 U.S. 197 (2005).  *See also  Ricciuti v. N.Y.C. Transit Auth*., 941 F.2d 119, 123 (2d Cir. 1991)

("When the plaintiff has submitted a proposed amended complaint, the district judge may review that

pleading for adequacy and need not allow its filing if it does not state a claim upon which relief can

be granted.").  Does Briscoe's proposed FAC pass muster under that test?

I conclude that allowing Plaintiff to file his  proposed Fourth Amended Complaint would be

futile because it would not cure the Title VII deficiencies in the Third Amended Complaint that were

identified in *Briscoe I.*  My conclusion assumes, of course, that *Briscoe I* was decided correctly.  I

believe that it was, and will continue in that belief until instructed otherwise, should that come to

pass.

The City's brief [Doc. 288] at 7-8 quotes passages from *Briscoe I*, 2013 WL 4780097 at *25,

which summarize my reasoning in concluding that the Third Amended Complaint failed to state a

Title VII claim for disparate impact.  I will not repeat that part of my prior Ruling in this Ruling, but

22

I incorporate those passages by reference in this Ruling, and it is useful to note that in *Briscoe I* I also said:

> However, the facts are that however one adjusts the weighting, or even weights the oral component at 100 percent and the written component at 0, three African-Americans would under any formulation be promoted on the basis of the 2003 exam scores – just as three were in fact promoted using the 60/40 weighting. That proof supports an inference that the 60/40 weighting the City used had no disparate impact on African-American candidates *as a race*. Of course, the 60/40 weighting had an adverse impact upon Briscoe *as an individual*: his lesser showing on the written exam compromised his greater showing on the oral exam, and cost him a promotion. But Title VII is not concerned with the effect upon an individual of the academic, educational or professional niceties of grading an examination for promotion. Title VII prohibits an employer's use of a practice that has a disparate impact upon members of a race or other protected group. To state a prima facie claim, a Title VII plaintiff must allege facts showing that is what actually occurred, or at the very least that it is plausible to think so.

2013 WL 4780097, at *25 (emphases in original).[6]

In his brief in support of the present motion to amend [Doc. 287] at 2, counsel for Briscoe says that the proposed Fourth Amended Complaint "more expressly identifies the 2003 lieutenant's exam as a whole as the employment practice that caused a disparate impact, alleging that its written and oral components and their relative weighting cannot be meaningfully separated from one another for independent analysis."' The brief further asserts at 3-4: "Plaintiff has properly alleged an unlawful disparate impact at the level of (a) the test as a whole; or, in the alternative (b) the written test, (c) the weighting, and (d) the combined effect of the written test and the weighting." I have

---

[6]   In *Briscoe I* and in this Ruling, I have cited, considered and discussed the results of the 2003 lieutenants' examination. I may do so without converting the City's motion to dismiss into one for summary judgment, because the examination process and the results of the exam are pleaded and incorporated by reference in each of the Plaintiff's complaints.

carefully considered these protestations and, laying them aside, read and re-read the Third Amended Complaint, the Ruling in *Briscoe I*, and the proposed Fourth Amended Complaint. Having performed those exercises, I find myself unable to discern how the allegations of the FAC cure the deficiencies of the TAC, as I described them in *Briscoe I*, I believe correctly.

To be sure, *Briscoe I* focused upon the written exam and the 60/40 weighting: that is hardly surprising, since as noted in Part II, those are the only aspects of the City's promotion process about which up to that time Briscoe had ever specifically complained, beginning with his EEOC charge. The proposed Fourth Amended Complaint brings the exam's oral component from the far-off wings to center stage, and speaks in terms of "the exam as a whole" causing a disparate impact. But I do not see how mixing, slicing and dicing, and rearranging the ingredients changes the edibility of the product – or, to abandon the culinary metaphor, the legal viability of Briscoe's Title VII claim. It is just as true in the world created by the Fourth Amended Complaint as it was in the world of the Third: however one adjusts the components of the exam, "three African-Americans would under any formulation be promoted on the basis of the 2003 exam scores – just as three were in fact promoted using the 60/40 weighting." *Briscoe I*, 2013 WL 4780097, at *25. The FAC does not sufficiently allege that the 2003 exam caused a disparate impact upon the *race* of African Americans, any more than did the TAC. And Briscoe's change in tactics, giving greater prominence to the oral component of the examination, avails him nothing in constructing a viable Title VII claim, since the results of the oral test favored him, and did not disparage or discriminate against him.

In short: If *Briscoe I* correctly identified in the Third Amended Complaint deficiencies in Briscoe's Title VII claim of disparate impact, the proposed Fourth Amended Complaint does not cure those deficiencies. The FAC would be as vulnerable as the TAC to a Rule 12(b)(6) motion to

dismiss. In consequence, the Court will not grant Plaintiff leave to file the FAC, because to do so would be futile.

## CONCLUSION

For the foregoing reasons, and in the exercise of my discretion, Plaintiff's motion under Fed. R. Civ. P. 15(a) for leave to file a Fourth Amended Complaint in the form submitted [Doc. 286] is DENIED. The bases for decision are:

Plaintiff's motion is untimely, and would subject the Defendant City of New Haven to unfair prejudice. Plaintiff made his motion to amend on the basis of facts known to him previously for two years, and he made the motion only after the Court dismissed the Third Amended Complaint for failure to state a claim, circumstances which reveal that Plaintiff is engaged in the disfavored stratagem of using the Court's prior Ruling as an advisory opinion on how to plead a viable claim.

In any event, the proposed Fourth Amended Complaint would be futile because it does not cure the deficiencies the Court held to exist in the Third Amended Complaint.

I reiterate the dispositions decreed at the conclusion of the Ruling in *Briscoe I* [Doc. 281]. The First Claim in Plaintiff's Third Amended Complaint [Doc. 199-2], the operative pleading in the case, is DISMISSED WITH PREJUDICE, AND WITHOUT LEAVE TO FURTHER REPLEAD. The Second Claim is DISMISSED WITHOUT PREJUDICE.

The Clerk of the Court is directed to close the case.

It is SO ORDERED.

Dated:   New Haven, Connecticut
            November 14, 2013

                                        */s/Charles S. Haight, Jr.*
                                        CHARLES S. HAIGHT, JR.
                                        Senior United States District Judge